## NANCY TODD *v.* JAMES MAY

CIRCUIT COURT                                   FIRST CIRCUIT
FILE No. CV 1-7211-36228

Memorandum filed July 5, 1973

*Willard Carter,* of Wilton, for the plaintiff.

*Steven P. Hershey,* of South Norwalk, for the defendant.

HENEBRY, J.   The plaintiff brings this action of summary process on the ground of nonpayment of rent for premises allegedly occupied by the defendant in Stamford, Connecticut.   Service of the summary process writ, which was dated November 1, 1972, was accomplished by abode service on November 3, 1972.   The writ alleged a month-to-month oral leasing by the plaintiff to the defendant at $200 per month due and payable on the first day of

each month and that the eviction action was based on nonpayment of rent. A copy of the notice to quit, dated October 17, 1972, and showing on the deputy sheriff's return thereon an abode service on October 19, 1972, was filed with the writ, although the notice to quit was neither incorporated by reference in the complaint nor attached as an exhibit to it. The copy of the notice to quit, contrary to the allegations in the writ, alleged the reason for the notice to quit as being a failure on the part of the defendant to pay a rental sum of $50 per week.

In addition to filing an answer in which all of the allegations of the complaint were denied, the defendant set up four special defenses as follows: (1) The premises contained numerous violations of the municipal and state housing and health code standards, and any leasing of the premises was, therefore, illegal. (2) The premises were untenantable and unfit for human habitation at all times relevant to the action. (3) Within six months prior to the institution of the action, the defendant in good faith attempted to remedy the state and local housing and health violations either by contacting the city officials who filed notices or orders in regard to the violations or by requesting the landlord to make repairs on the premises. (4) The complaint alleges a month-to-month tenancy by parol lease, while the actual tenancy was on a week-to-week basis, which latter tenancy could not be terminated for nonpayment of rent until nine days had elapsed, at which point in time the lease for nonpayment of rent had already expired by lapse of time and could not thereafter be otherwise terminated.

The court finds the following facts:

For some ten years prior to the institution of the action the plaintiff had owned, among other properties, approximately five "in row" tenement houses

in Stamford, Connecticut. Each of the apartments had six rooms and a bath, with a front and a back porch and a large cellar. One of the apartments had been occupied by the defendant for some time prior to November 1, 1972. The rental for this apartment was $185 per month until it was raised to $200 per month sometime prior to November 1, 1972. The leasing arrangement, as contemplated and actually carried out by the parties, was actually, however, on a week-to-week basis, originally $45 per week and later, but prior to November 1, 1972, $50 per week.

Over the years, and by her own admission when called as a witness for the defendant, the plaintiff had received "hundreds" of orders from the health department to fix up or make repairs to many of these apartments, including that of the defendant. By letter dated August 30, 1972, the defendant notified the plaintiff that owing to the dangerous conditions existing on the premises he was not willing to renew the existing lease arrangement but would only be willing to pay $100 a month henceforth. This notice was received by the plaintiff along with many others in a similar vein from tenants occupying properties owned by the plaintiff.

It was the defendant's testimony that he had lived at the address as a tenant for some seven years; that living on the premises with him were some nine children, the youngest of whom was six years of age; that the rental charge had originally been $40 per week, after which it had been raised to $45 per week and finally to $50 per week, which latter rental he had refused to pay, but he had offered to continue to pay the $45 per week; that prior to November 1, 1972, he and his wife decided not to pay more than $100 per month, and as a consequence of this decision his wife signed and sent the letter from both of them to the plaintiff, the letter being in the form

of a notice of a rent strike which was sent out by many of the plaintiff's tenants on or about the same time; that the defendant had decided to send the letter to the plaintiff because she had said she would not make repairs to the premises but would knock it to the ground first; that during the three months prior to November, 1972, the premises were in bad shape, i.e. the paint was peeling on the walls and woodwork in three bedrooms, rats and roaches were infesting the premises, a hole in the floor of one of the bedrooms which was large enough for one leg of the bed to fall through had not been repaired, plaster was falling from the walls and ceilings of the upstairs rooms, and the stair treads between the first and second floor were weak; and, lastly, that the defendant had been compelled about six years prior to November, 1972, to pay for the installation of a new heater for the apartment, since the one furnished by the plaintiff smoked and the plaintiff had refused to replace it.

It was also the testimony of the defendant that between November, 1972, and the date of trial, May 30, 1973, the plaintiff had not come around each week, as had been her custom in the past, to collect the weekly rental; that the defendant did not know where to send the money; that during this time he had paid over to legal aid services which represented him about $500 to $600 on the rent account; and that had the plaintiff put the premises in proper repair the defendant would have authorized that this money be turned over to the plaintiff.

The supervisor of housing code enforcement for the Stamford health department testified in behalf of the defendant that during his four years of service he caused the plaintiff's properties in question to be inspected for violations on an average of four times a year; that, specifically, the defendant's premises as well as the other apartments were

inspected in June, August and September of 1972; that violations were found to exist in June, 1972, in that (1) the rear yard was a rat harborage area because of accumulations of garbage and building materials, the latter having accumulated clearly owing to the plaintiff's negligence, (2) the cellar was neither rodent proof nor sanitary, (3) the ceilings in two bedrooms were unsound and unsafe, (4) windows were broken and unscreened in the kitchen, not necessarily owing to the plaintiff's neglect, (5) there was a defective electrical fixture in the bathroom, and (6) the premises were roach infested and no action had been taken by the plaintiff for a considerable period of time to employ roach exterminators; that reinspections of the premises were made on August 4 and August 15 and disclosed that the defective electrical fixture had been corrected as well as the cracked ceilings and the broken and unscreened windows in the kitchen, but that no action had been taken to clear up the rat harborage problem in the rear yard or to make the cellar rodent proof or to employ any kind of a roach extermination program; that all of these latter violations of the Stamford housing code were considered to be serious breaches of the health ordinances and had never actually been corrected by any serious effort undertaken by the plaintiff, even as late as May, 1973, when these and other violations were still found, on a further inspection, to exist; and that the tenant was not the major cause of any of the violations for which the plaintiff had been cited.

It was also the testimony of the lead poisoning control coordinator of the housing code enforcement program that tests of the paint on the second-floor bedroom and hallway walls in the defendant's apartment shortly prior to June 29, 1972, disclosed that the paint contained a concentration of lead in excess of one percent. By letter dated June 29, 1972, the

plaintiff was ordered either to remove the paint in question and cover the areas with a lead-free paint or to cover the affected surfaces with a hardboard material, all within thirty, days. The defendant testified that the last painting done on the premises was in 1971, when he had painted the upstairs, and that nothing whatsoever had been done in the way of repainting since that time.

At the conclusion of the presentation of the plaintiff's case, the defendant moved for a nonsuit on the ground that the evidence clearly established a week-to-week tenancy and that the notice to quit possession could not have terminated the lease for any week previous to service of the notice, since the leases for those weeks had already expired by lapse of time, or that the notice to quit possession could not have terminated the lease, on the ground of non-payment of rent, for the week in which the notice was served, because nine days had not elapsed from the date on which the rent was due to the date of the service.

This court is of the opinion that a plaintiff owner is not in a position of impossibility in so far as being able to evict a week-to-week tenant for nonpayment of rent is concerned, and the motion for nonusit was, accordingly, denied.

At the conclusion of the entire trial, the defendant also moved for a nonsuit on the ground that there was no evidence to show personal service' of the notice to quit on the defendant, there merely being evidence of abode service. In the court's view this is a question of jurisdiction which, if raised at all, should have been the subject of attack by way of a special appearance and plea in abatement at the outset of the action. Any such technical objection would appear to have been long since waived by the defendant's general appearance. This court is not

aware of any rule of law requiring that service of the notice to quit in a summary process action be personal service as contrasted with a proper abode service. Nor was the motion for nonsuit timely, since it came after both parties had rested their cases rather than immediately after the plaintiff had rested. See 2 Stephenson, Conn. Civ. Proc. (2d Ed.) §§ 192, 193 b (2). The motion for nonsuit on this ground is, therefore, denied.

Looking to the merits of the case and directing itself to the issues which are dispositive of the matter at hand, the court, after a review of all of the evidence, is convinced that the defendant established by a fair preponderance of the evidence his first and second special defenses, to the effect that (1) the premises contained violations of the housing code of the city of Stamford of a substantial nature and any contract for the leasing of the premises during the time in question was illegal and void, and (2) the premises were untenantable and unfit for human habitation at all times relevant to this action. This court has not been inclined in the past to find violations of municipal or state housing codes which would justify refusing a landlord the remedies of a summary process action for nonpayment of rent unless the evidence of neglect was substantial and clearly attributable to the malfeasance or purposeful nonfeasance of the owner. Where the proof is clear, the court has no choice. There is no question that the plaintiff consistently ignored her obligation as an owner of the premises to see to it that they were fit for human habitation and were not in serious violation of the local and state housing codes. There was an obvious failure on the part of the plaintiff to take whatever minimal action was necessary over a considerable period of time to obviate the rodent and roach infestations, which by their mere existence could lead to health hazards

too numerous to mention. Nor did the plaintiff take any measures to repaint certain walls of the premises which contained a high percentage of lead-based paint, although she was duly warned by the issuance of an order of the department of health of the city of Stamford dated June 29, 1972.

The applicable rules in cases such as this which involve a possible breach of the covenant of habitability under § 47-24b of the General Statutes, as well as violations of local municipal housing code provisions, have been accurately and concisely summarized in *LeClair* v. *Woodward,* 6 Conn. Cir. Ct. 727, 729.

For all of the reasons stated, the court finds that the defendant's first and second special defenses have been established by a fair preponderance of the evidence and that the plaintiff's eviction action for nonpayment of rent based on a leasing agreement which had its roots in the unlawful acts of the plaintiff ought not to prevail.

The issues on the plaintiff's complaint are, therefore, found in favor of the defendant and, accordingly, judgment may issue in favor of the defendant.