JOHN STEINEGGER *v.* ADELINA ROSARIO

SUPERIOR COURT
JUDICIAL DISTRICT OF
FAIRFIELD AT STAMFORD

GEOGRAPHICAL AREA NO. 1
FILE No. CV 1-787-43618

Memorandum filed January 22, 1979

*Wofsey, Rosen, Kweskin & Kuriansky,* for the plaintiff.

*Connecticut Legal Services,* for the defendant.

MELVILLE, J. This is a trial of a summary process action brought on the basis of nonpayment of rent. The defendant, hereinafter the tenant, denies that she has paid no rent for the three-month period in question and claims by way of special defense that payment of rent during this period was excused by

operation of General Statutes § 47a-4 (c)[1] because the premises were uninhabitable under the provisions of General Statutes § 47a-7 (a) (2).[2]

The pertinent facts in this case are as follows: The plaintiff, hereinafter the landlord, leased an apartment to the tenant in April, 1975, for $230 per month on a month to month oral lease. In May, 1978, the landlord gave the tenant notice of an increase in rent to $260 per month commencing in June. The tenant neither paid the increased rent in June nor tendered any of the old rent. No rent has been paid or tendered to the landlord since that date although the tenant has remained in possession of the premises and has continued to live there with her five minor children.

The director of the city health department inspected the premises the day prior to the trial and found, inter alia, the following violations of the city health code: defective windows, i.e., rotten window frames; lack of provision on the front door for the attachment of an adequate locking device; and evidence of possible roach and rodent infestation. It was his opinion that the window and door defects developed over a long period of time and that they were hazardous to the health and safety of the occupants of the premises.

The tenant had requested the landlord to repair or correct those defects or conditions on many occasions both before and after the refusal to pay the

[1] General Statutes § 47a-4, entitled "Terms prohibited in rental agreement," provides "(c) A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7."

[2] "[General Statutes] Sec. 47a-7. LANDLORD'S RESPONSIBILITIES. (a) A landlord shall . . . (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant . . . in which case such duty shall be the responsibility of the tenant . . . ."

June rent. Furthermore, despite numerous complaints by the tenant to the landlord of the presence of roaches, the apartment in question had never been visited by an exterminator nor had the tenant ever been contacted by the exterminator whom the landlord kept on retainer. The landlord admitted on examination by the court that he had agreed to repair the tenant's doors and windows and to exterminate any roaches or rodents which might be present in her apartment.

The landlord claims that the fact that the tenant failed to tender even the old rent is dispositive of the case. Ordinarily it would be. It is settled law in this state that despite the absence of an agreement on a new rental figure, the tenant must tender each month what he or she claims is due under the old rental schedule in order to avoid a default. *Kligerman* v. *Robinson,* 140 Conn. 219, 221. The tenant claims, however, that she is excused from this obligation to tender rent where by law no rent is due.

The issue thus raised is whether § 47a-4 (c) permits a tenant to live rent-free during the time when violations under § 47a-7 (a) exist. The landlord further argues (1) that § 47a-4 (c) does not relieve the tenant from paying rent because it was not intended to change the common law that covenants to repair are independent of the covenant to pay rent and (2) that § 47a-4 (c) was intended merely as a prohibition against the insertion of a waiver of the landlord's duty to repair in the rental agreement.

The issue in this case turns on whether the statutory duty to maintain the premises in a habitable condition as required by § 47a-7 (a) (2) was intended by the legislature to be dependent upon the covenant to pay rent. The court is of the opinion that this was the legislature's intent.

Under § 47-24b, the previous statute,[3] the legislature created an implied covenant of habitability in oral leases. Section 47-24, which was repealed as of January 1, 1977; Public Acts 1976, Nos. 76-95 and 76-435; stated that a tenant was not liable for rent while the premises were untenantable. Those sections, however, were repealed when the legislature enacted title 47a, chapter 830, entitled "Rights and Responsibilities of Landlord and Tenant." While it was clear under the old statute that a tenant was not required to pay rent when the premises were uninhabitable; *LeClair* v. *Woodward,* 6 Conn. Cir. Ct. 727; *Todd* v. *May,* 6 Conn. Cir. Ct. 731; it is less clear under the current statute. There have been no reported cases under the current statute which deal specifically with this question.

The section which must be construed is § 47a-4, "Terms prohibited in rental agreement." The landlord argues that subsection (c) states simply what a rental agreement "shall not permit." It is an elementary principle of statutory construction that "[w]hile the title of an act may be considered . . . it is not conclusive, and it is of little importance compared with the text." *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 98. Thus, while subsection (c) of 47a-4 is contained under the title "Terms prohibited in rental agreement," that fact does not dispose of the question of what is meant by the subsection. The fact, however, that subsection (c) is set off from the other clauses which prohibit the inclusion of certain provisions in the rental agreement, i.e., confession of judgment, distraint of property, waiver of right to interest on

---

[3] "[General Statutes] Sec. 47-24b. COVENANT THAT LEASED PROPERTY IS FIT FOR HABITATION. Each parol lease of real property intended for human habitation shall be deemed to contain a covenant on the part of the lessor that such property is fit for such habitation." Repealed January 1, 1977, Public Acts 1976, No. 76-95; Public Acts 1976, No. 76-435.

security deposit, coupled with the provision of subsection (b) which makes only the clauses in subsection (a) unenforceable, indicates that subsection (c) was intended to be a separate and distinct right. If this were not the case and subsection (c) meant merely that a lease provision wherein the landlord attempted to avoid his responsibilities thereunder would be unenforceable, then there would be no point either in setting subsection (c) apart from subsection (a) or in employing different language from that in subsection (b) which provides the remedy for violations of subsection (a). Subsection (c) as such would be superfluous. Again, it is "an elementary principle of statutory construction that a statute should be construed so that '[n]o word in a statute should be treated as superfluous . . . or insignificant.'" *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 100. See *State* v. *Briggs,* 161 Conn. 283, 287; *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 74; and *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 211. Consequently, the statute in question ought properly to be construed to avoid these officious sins of superfluousness and insignificancy.

A final point should be mentioned with respect to § 47a-4 (c) and its interrelationship with other sections of chapter 830, entitled "Rights and Responsibilities of Landlord and Tenant." If, as the landlord urges, the court were to construe § 47a-4 (c) as merely disallowing a *clause in a rental agreement* which permits the receipt of rent during any period during which a landlord has failed to comply with § 47a-7 (a), the legislature would have, in effect, created a right without a remedy. In other words, a tenant from month to month is entitled under § 47a-7 (a) (2) to premises "in a fit and habitable condition"; however, unless § 47a-4 (c) is read in such a way as to provide such a tenant with a

remedy for the violation of § 47a-7 (a), such tenant has *no* remedy.[4] It is clear then that chapter 830 is meant to protect both the landlord and *all* classes of tenants from possible abuses which might arise in the course of their relationship. Any reading of § 47a-4 (c) such as that advanced by the landlord in the instant case would thwart that purpose. Furthermore, such a construction contravenes established principles of statutory construction. "[A] statute conferring a privilege or a right carries with it by implication everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete." *Bergner* v. *State,* 144 Conn. 282, 288; *State ex rel. Rourke* v. *Barbieri,* supra, 210. Certainly, without an adequate means of enforcing the landlord's obligation to maintain a premises in a habitable condition, the legislative intent would not constitute a complete and effective remedy.

Thus, by established principles of statutory construction, it seems clear that § 47a-4 (c) is not merely a prohibition against contractual waiver, but rather a legitimate excuse for nonpayment of rent. In other words, this court concludes that it was the legislature's intent to carry over into § 47a-4 (c) the legal concepts established by § 47-24b and the subsequent decisional law appurtenant to it.

Since the court concludes that the premises were in fact uninhabitable by virtue of the long-standing defective window and door conditions and the

---

[4] The landlord suggested that § 47a-12 entitled "Breach of agreement by landlord. Tenant's remedies," provided an adequate remedy to the tenant for the landlord's breach of § 47a-7 (a) (2). It should be pointed out, however, that § 47a-12 (b) specifically excludes month to month tenancies. Consequently, if § 47a-4 (c) is construed as the landlord urges, a substantial number, if not a majority, of people who rent on a month to month basis are left effectively unprotected by this legislation.

rodent and roach infestation[5] during the period in question and that the landlord expressly agreed to correct those specific conditions[6] and, further, that § 47a-4 (c) relieved the tenant from paying rent during this period, the fact that she tendered no rent is irrelevant under these circumstances. Therefore, for the reasons already stated, judgment in this case must be rendered for the defendant tenant and against the plaintiff landlord.

---

[5] As to roach infestation rendering a premises unfit, see *Todd* v. *May,* 6 Conn. Cir. Ct. 731, 737.

[6] The court interpreted the testimony of the landlord that he had agreed to repair or correct the defective conditions under "any conditions," to mean irrespective of who caused the condition or defect. Even if there were no agreement to repair defective conditions caused by the tenant or her family or guests, the burden of proof on this issue pursuant to § 47a-7 (a) (2) is on the landlord. Under the factual circumstances of this case the court cannot find that the landlord has carried that burden with respect to this issue.