[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 9311
In this action plaintiff seeks to evict defendant for non-payment of rent. The parties have stipulated that the rent for the month in question was not paid. The only disputed issue is whether, as defendant claims, there was serious and pervasive rodent and roach infestation of the apartment, rendering it uninhabitable within the meaning of General Statutes Sec. 47a-7 and thereby relieving her of the obligation to pay rent. Plaintiff does not seriously contest that there was substantial infestation problem in defendant's apartment. It insists, however, that the problem is the result of defendant's poor housekeeping habits, and therefore is not a defense to the non-payment of rent.
 I.
Defendant is the mother of two infants, ages three and one. They took occupancy of a one bedroom apartment at 67-H Bellevue Square in Hartford in January, 1992. Beginning in February, 1992, defendant began making repeated complaints both to the City of Hartford License and Inspection (Housing Code) Division and the Housing Authority alleging that her apartment was infested with roaches, ants and rodents. On numerous occasions during the late winter and early spring the Housing Authority exterminated defendant's apartment. An inspection by city housing code inspectors in March and June, 1992, disclosed that defendant's complaints were well founded. The June, 1992 inspection report found that the entire unit was roach infested and that there were rodent entry points at various locations in the apartment. The Authority was given until July to correct the problems; however subsequent inspections indicated that it was not until August that the inspectors were satisfied that the problems had been properly addressed.
CT Page 9312 In June, 1992, defendant's three-year old son was treated at St. Francis Hospital for an allergic reaction to a bug bite received in the apartment. An ant was found in the ear of his one year old brother. These problems prompted the children's physician, to write a letter to plaintiff requesting that the problem be abated immediately. Additionally a social worker from the Hospital was assigned to investigate the defendant's complaints concerning the apartment conditions and provide appropriate support services to her and the children. In July the social worker learned that defendant and children had effectively moved into her mother's apartment both because of the ongoing roach and rodent problems and because the three-year old son had become so traumatized by the conditions that he could no longer sleep in the apartment. The social worker, who made at least six visits to the apartment, described the conditions as "deplorable."
In addition to the roach and rodent problem, the evidence presented at trial, including photographs and inspection reports, indicate that because of the replacement of the heating system there are open holes in defendant's apartment in which the water and heating pipes run. In order to prevent rodents access through these holes, it is necessary to stuff them with steel wool. Additionally, there are no outside safety doors to the building such that there is absolutely unfettered access to the interior of the building and the apartments within.
The Housing Authority does not deny that defendant's apartment is infested by roaches and possibly rodents, although its witnesses generally did not perceive the problem to be as severe as painted by defendant. Its principal contention is that it is defendant's poor housekeeping habits that created the problem and allowed it to continue despite its repeated efforts to abate it. In support of its claim the Authority presented testimony indicating that during various inspections and exterminations it discovered that defendant either did not properly dispose of food or maintain an acceptable level of cleanliness in the apartment. In particular plaintiff points to defendant's failure to dispose of garbage and old food and her failure to clean the kitchen appliances and floor as the principal cause of the roach and rodent problem. Plaintiff insists that defendant's is the only apartment in the building with this magnitude of CT Page 9313 infestation problem, and insinuates that defendant may purposefully be creating the condition in order to apply pressure on plaintiff to move her to a larger apartment.
 II.
General Statutes Sec. 47a-7(a) provides that "A landlord shall (1) Comply with the requirements of . . . all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant . . . in which case such duty shall be the responsibility of the tenant." General Statutes Sec.47a-4(c) prohibits a landlord from collecting rent for any period in which it has failed to comply with its responsibilities under 47a-7.
Courts which have considered the relationship between General Statutes Sec. 47a-7 and 47a-4 have uniformly concluded that where the premises have been rendered uninhabitable by virtue of rodent and roach infestation, the tenant is relieved from the obligation to pay rent and may raise the uninhabitability of the apartment as a defense to a summary process action based on nonpayment of rent. Steinegger v. Rosario, 35 Conn. Sup. 151 (1979); Tucker v. Lopez, 38 Conn. Sup. 67 (1982). Whether the premises is uninhabitable to the extent that the tenant is relieved of the obligation to pay rent depends on the facts of each individual case and whether the uninhabitability is caused by the tenant. Hayes v. Capitol Buick, 119 Conn. 372 (1935).
The court is persuaded that the landlord has failed to discharge its responsibility to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." The evidence presented compels the conclusion that the apartment was infested with roaches and rodents, causing physical and psychological harm to defendant's children and requiring her to effectively abandon the premises in favor of her mother's apartment. With respect to plaintiff's claim that defendant is responsible for the dismal conditions in the apartment, the court concludes that while defendant's cleaning habits may have exacerbated the problem, they did not cause them. CT Page 9314 Plaintiff's own witnesses testified that rodents could enter the apartment through the holes in the floors carrying the pipes. Furthermore, the complaint and maintenance records indicated that the roach problems were present from virtually the day defendant moved into the apartment. Further, there is no evidence to suggest that defendant purposefully created the problems or allowed them to persist to use as leverage to obtain a larger apartment. To conclude otherwise would be to attribute to defendant a willingness to callously disregard the welfare of her children in the interests of manipulating the Housing Authority. Based on the court's evaluation of the witnesses and the testimony of her social worker it is not prepared to indulge that suggestion.
JUDGMENT FOR THE DEFENDANT. SO ORDERED.
HOLZBERG, J.