## Anthony Alteri *v.* Dana Layton

SUPERIOR COURT           HOUSING SESSION

JUDICIAL DISTRICT OF HARTFORD-NEW BRITAIN AT NEW BRITAIN    FILE NO. SP-N-7904-229-NB

Memorandum filed June 15, 1979

*Marcus H. Bordiere,* for the plaintiff.

*David A. Pels,* for the defendant.

SPADA, J. This is an action in summary process wherein the plaintiff landlord seeks possession of a dwelling unit alleging the termination of an oral month-to-month lease. The defendant tenant pleaded two special defenses. The first special defense contends that the action is barred by § 47a-20[1] of the

---

[1] "[General Statutes (Rev. to 1979)] Sec. 47a-20. . . . RETALIATORY ACTION BY LANDLORD. (a) No landlord shall maintain an action or proceeding against a tenant to recover possession of a dwelling unit . . . after: (1) The tenant has in good faith attempted to remedy by any lawful means, including . . . [contacting] officials of the state or of any town, city or borough or public agency . . . any condition constituting a violation of any provisions of chapter 352, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) the tenant has in good faith requested the landlord to make repairs; or (4) the tenant has organized or become a member of a tenants' union."

General Statutes. The second special defense charges that the plaintiff's retention of a tender of rent subsequent to the notice to quit is tantamount to an "acceptance" and, therefore, vitiates the eviction proceeding. The issues raised by the second special defense were the subject matter of the defendant's motion to dismiss dated April 16, 1979, and denied by this court on May 9, 1979. The parties are referred to that decision, *Alteri* v. *Layton*, 35 Conn. Sup. 258.

The evidence presented could have reasonably established the following facts. The parties enjoyed an uneventful landlord-tenant relationship for four years. On or about February 25, 1979, the defendant complained of a stoppage in his bathtub. The plaintiff's plumber remedied the stoppage on or about March 1, 1979. On March 16, 1979, the tenant filed with the town sanitarian a complaint of a broken rear door frame and a loose bathroom sink. The defendant telephoned a second request for inspection, on May 9, 1979, and the complaint was initially verified by the town sanitarian on May 15, 1979. Both items were characterized as nonemergency repairs. On May 16, 1979, the sanitarian mailed a written notice to the plaintiff requesting him "to repair door frame and loose sink." The plaintiff served a notice to quit upon the defendant on March 20, 1979, and issued the present complaint on April 3, 1979.

The case at hand raises substantial and significant issues of fundamental importance to both the landlord and tenant communities. It is a case of first impression in Connecticut and there is little or no authority from other jurisdictions to guide the court.

Although the defendant asserts only the defense of retaliatory eviction under § 47a-20, supra, the

court feels compelled to review for anticipated litigation the relationship of a second retaliatory action statute, § 47a-33 of the General Statutes.[2]

Section 47a-20, supra, is entitled "Retaliatory action by landlord," and § 47a-33, supra, is designated "Defense that action is retaliatory." Section 47a-20 is the successor to § 19-375a of the 1975 General Statutes, now repealed, and § 47a-33 succeeds § 52-540a of the 1975 General Statutes, also repealed. Section 19-375a was previously ensconced in chapter 352, the Tenement House Act, and § 52-540a operated under chapter 922, the previous summary process chapter. In an effort to streamline summary process proceedings, both statutes were renumbered and placed under title 47a, the landlord and tenant chapter of the 1979 statutes. It was not a successful effort.

Section 47a-33, supra, essentially establishes a tenant's right to claim a defense of retaliatory eviction where the tenant has reported housing code violations to the appropriate authorities. This right was judicially recognized in *Edwards* v. *Habib,* 397 F.2d 687 (D.C. Cir.). See generally, "Landlord and Tenant—Burden of Proof Required to Establish Defense of Retaliatory Eviction," 1971 Wis. L. Rev. 939–51.

[2] "[General Statutes (Rev. to 1979)] Sec. 47a-33. . . . DEFENSE THAT ACTION IS RETALIATORY. In any action for summary process under this chapter it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city, borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any of the provisions of chapter 352, or of chapter 412 or of any other state statute or regulation, or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie. The obligation on the part of the defendant to pay rent or the reasonable value of the use and occupancy of the premises which are the subject of any such action shall not be abrogated or diminished by any provision of this section."

Section 47a-20 (a) (1) contains language nearly identical to that of § 47a-33. Three additional subdivisions[3] complete the makeup of Section 47a-20 (a), supra. The four subdivisions of § 47a-20 (a) are intended to trigger the defense of retaliatory action.

The retaliatory defense statutes, although outwardly similar in content, are nevertheless widely different in application. Under § 47a-20, supra, the retaliatory eviction defense is not a right given to tenants, but rather a limitation upon the remedies of the landlord. Upon the occurrence of one or more of four acts committed by the tenant, the landlord "shall maintain . . . [no] action . . . against a tenant to recover possession of a dwelling unit . . . within six months after . . . ." Section 47a-20 (a), supra.[4] Therefore, under § 47a-20 (a), the establishment of a prima facie case by a tenant under any one or more of the four prescribed acts would give rise to a presumption of retaliatory action by a landlord. Once the tenant has produced sufficient evidence to bring himself within one or more of those four actions, then a prima facie case will have resulted. The presumption of § 47a-20 is rebuttable, and the landlord is permitted by substantial countervailing evidence to rebut it. In essence, he will be required to establish a legitimate interest in the eviction. The presumption is accorded as a matter of public policy. It imposes upon the landlord not only the burden to produce substantial countervailing evidence but also the burden of proving facts which fairly put in issue the presumed fact. *O'Dea* v. *Amodeo,* 118 Conn. 58.

Conversely, § 47a-33 specifically establishes the retaliatory action as "an affirmative defense."[5] No presumptions are permitted and the tenant, by

---

[3] See footnote 1 for the three subdivisions referred to.

[4] See footnote 1, supra.

[5] See footnote 2, supra.

affirmative proof, is required to prove that the land-lord's primary motive in seeking an eviction was in retaliation for the tenant's exercise of his statutory right to report housing code violations to the appropriate authorities. The burden of persuasion for this affirmative defense, therefore, rests upon the tenant who asserts it. Practice Book, 1978, § 164.

The defendant telephoned his complaint to the town sanitarian on March 16, 1979. The notice to quit was served on March 20, 1979. The limitation of the right to summary process does not apply under § 47a-20 (b) (4), where "the landlord seeks to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant previous to the tenant's complaint."[6] Implicit within this proviso is the requirement that the landlord have notice of the tenant's complaint to the public authorities prior to the issuance of notice. Without proof of notice, the basis for the presumption of retaliatory action could not exist. It was undisputed that the plaintiff received notice of the tenant's complaint from the sanitarian on or after May 16, 1979.

That notice is required to invoke the presumption of retaliatory defense was confirmed in *Dickhut* v. *Norton,* 45 Wis. 2d 389. In *Dickhut,* a defendant on an oral, monthly tenancy was served with a notice to quit shortly after he filed a complaint with the city health department. In permitting the retaliatory defense, the court found that, in order to be successful, the tenant would have to prove that the landlord knew that the tenant had reported the condition to the enforcement authorities, and that the landlord sought to terminate the tenancy for the sole purpose of retaliation. The court notes in passing that the defendant in the present case charged that he had,

---

[6] Repealed by Public Acts 1979, No. 79-571 § 17.

on occasion prior to March 20, 1979, requested of the plaintiff that he repair the rear door frame and sink. The plaintiff and a witness refuted those charges. The court is disposed to accept the plaintiff's version. Nothing is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. *Appeal of Cohen,* 117 Conn. 75.

Two issues remain to be answered: (1) Did the tenant in good faith request the landlord to make repairs?[7] and (2) Was the presumption of retaliatory action properly countervailed by the plaintiff? In view of the resolution of this case, it will not be necessary to address the second issue.

The court does not dispute that the evidence reasonably established that the defendant in good faith requested the plaintiff to unclog his bathtub drain. The court does not, however, deem this action a "repair" sufficient to raise the presumption because it was not of the type or substance contemplated by the legislature. A research of the archives for the legislative intent of § 47a-20 as pertains to the issue of "repairs" is barren. Legislative comment supports the conclusion that the intent in enacting § 47a-20 was primarily to protect the tenant who has complained to a civil authority about a housing code violation. Strong evidence as to the quality of housing code violations may be found in the statement of Representative Richard D. Tulisano (a principal supporter of this legislation) to the General Assembly on May 25, 1976. In urging passage, he exhorted that "the reason for this legislation is that this state is facing a housing blight. We are attempting, and this is a first step, to stop urban decay and prevent decay in the suburbs in the future." 19 H.R. Proc., Pt. 3, 1976 Sess., p. 897.

---

[7] See footnote 1, supra.

In *Robinson* v. *Diamond Housing Corporation,* 463 F.2d 853, 865 (D.C. Cir.), a landmark case on a footing equal to *Edwards* v. *Habib,* 397 F.2d 687 (D.C. Cir.), the court, in declaring that a retaliatory eviction could not be tolerated, strongly suggested that the housing code violations had to be "substantial." The evidence clearly requires an interpretation of "repairs" under § 47a-20 (a) (3) as meaning repairs of substantial code violations. This court holds that repairs required to conform a dwelling unit to basic structural, mechanical and housing code regulations are the type of repairs which were contemplated by the legislature and which raise the presumption of retaliatory defense. To allow the presumption to be raised by a request that a bathtub drain be unclogged would be to open the floodgates for a multitude of requests for repairs. In Hartford alone there exist in excess of 12,000 substandard dwelling units[3] requiring repairs of both a major and minor nature. There is scarcely a dwelling unit in this jurisdiction beyond the pale of requiring repair. The necessity for repairs is applicable to nearly all existing dwelling units.

To enforce properly the statute in a meaningful manner requires a balancing of the interests of both landlord and tenant. The guidelines herein meet the objectives of the legislature. They fairly protect the landlord from harassment and they protect the tenant who seeks repairs of a substantial nature. To accept the literal interpretation propounded by the defendant could effectively negate the summary process proceedings of Connecticut statutes. The legislature could not have intended, in such an indirect fashion, to emasculate substantially a landlord's statutory right to the possession of his property. Under settled rules of statutory construction,

---

[3] Slitt, Director of Housing, Hartford, "Profile of Hartford Housing," January, 1979.

statutes on the same subject matter should be construed in a manner that harmonizes the law so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362. "Courts must assume that the legislature intended a reasonable and rational result and must, when possible, construe statutes accordingly." *Masone* v. *Zoning Board,* 148 Conn. 551, 556.

Accordingly, for the reasons cited herein, judgment for possession may enter for the plaintiff.