[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This residential summary process action was tried to the court. This case raises the issue of whether a tenant can prevail on the defense of unfit and uninhabitable premises in a non payment of rent case when the tenant has failed to permit the landlord or his agents access to the premises for the purpose of making repairs. CT Page 1198-Y
The plaintiff, Donald Gayle, claims that he rented the first floor apartment at 337 Sylvan Street, Bridgeport, Connecticut to the defendants, Basil Young and Yvette Young, on or about November 1, 1993 on a month to month oral tenancy with the rent of $675.00 due on the first of each month. They claim that the defendants did not pay the $675.00 rent due on August 1, 1994 and service of a Notice to Quit thereafter failed to cause the defendants to vacate the premises.
The defendant's have filed an answer in which they admit the non-payment of rent and deny certain other portions of the plaintiff's complaint. In addition the defendant's have filed a series of special defenses. The first special defense alleges the doctrines of res judicata and collateral estoppel by reason of a prior judgment in favor of the defendants in an eviction action between the same parties tried to the court in May 1994. The second special defense alleges that no rent is due because of the landlord's repair duties under the unfit and uninhabitable statutes, C.G.S. Sections 47a-4a and 47a-7(a), have not been complied with due to code violations. The third special defense CT Page 1198-Z alleges retaliatory eviction defenses but fails to allege either C.G.S. Sections 47a-20 or 47a-33. The fourth special defense alleges that the complaint fails to state a cause of action upon which relief may be granted in that the Notice to Quit for non-payment under a month to month tenancy must occur only during the month of non payment. The plaintiff replies to the special defenses with denials and an affirmative allegation in the nature of avoidance that the defendants failed to grant access to the landlord for the purpose of making the repairs and thus the defendants are using the code violations and C.G.S. Sections 47a-4a
and 47a-7(a) as a shield to facilitate withholding rent.
In addition to the standing order trial memoranda which were timely filed by both parties, the court requested counsel to furnish the court with any cases in which the tenant was prevented from raising the landlord's code violation under the unfit and uninhabitable statutes in Title 47a by reason of the tenant's refusal to permit access to the demised premises to the landlord and his agents for the purpose of making the repairs prior to and during the month in which the alleged non-payment occurred. Counsel could not cite any such cases beyond the general rules as to waiver CT Page 1198-AA and estoppel. There are no appellate cases in Connecticut on this subject and the court has not been able to find any Housing Session cases on point.
The court finds that the allegations of the plaintiff's second amended complaint dated October 31, 1994 have been established by credible and competent evidence. The court therefore finds that on November 1, 1993 the plaintiff as lessor entered into an oral month to month lease with the defendants, Basil Young and Yvette Young, as tenants, for the residential premises at the first floor 337 Sylvan Street, Bridgeport with rent due on the first day of the month in the amount of $675.00. The defendant took occupancy pursuant to that month to month tenancy and continues to occupy the premises. On August 1, 1994 the $675.00 rent for the month of August was due and the defendants failed to pay the rent within the nine day grace period set forth in C.G.S. Section 47a-15a. On August 31, 1994 the plaintiff caused a Notice to Quit dated August 31, 1994 to be served on the defendants to quit possession on or before September 7, 1994. The Notice to Quit stated "I hereby terminate your lease and give you notice that you are to quit possession or occupancy of the apartment now occupied by you at 337 CT Page 1198-BB Sylvan Street, Bridgeport, CT on or before September 7, 1994 for the following reasons: 1) NON-PAYMENT OF RENTAL PAYMENTS FOR APRIL 1994 AND EACH MONTH THEREAFTER, 2) DESTRUCTION OF PROPERTY, 3) REFUSAL OF ENTRY OF THE LANDLORD TO MAKE REPAIRS." The defendants continued in possession of the premises after September 7, 1994 and continue to occupy the premises.
The defendants have made the claim that no rent is due because the premises were unfit and uninhabitable. C.G.S. Sections 47a-4aand 47a-7(a). The defendants bear the burden of proving their special defenses. P.B. Section 164. "A person making a claim has the burden of proving each element by a fair preponderance of the evidence." Swift Co. v. Rexton, Inc., 187 Conn. 540, 542 (1982).
The defendants offered evidence to show that Paul Carbone, a housing inspector of the City of Bridgeport, inspected the premises on April 12, 1994 and noted in his written report admitted into evidence at both trials that certain conditions existed at the premises which were in violation of the codes of the City of Bridgeport. In the prior summary process case entitled Donald Gayle v. Basil Young and Yvette Young, SPBR 9404-26840 decided May 23, CT Page 1198-CC 1994, Mr. Carbone also testified and the same April 12, 1994 report was admitted into evidence. A transcript of the prior trial testimony and Judge Melville's bench decision of May 23, 1994 was offered as an exhibit in this trial. Judge Melville found that the code violation "No heat in apartment" and "Furnace inoperable" were sufficient to sustain the defendant's burden of proof that the premises were uninhabitable in the month of April 1994 when the alleged non-payment in that case took place. The transcript noted that Mr. Carbone testified that the temperature taken by him on April 12, 1994 was below the code mandated minimum of 65 degrees. Judgment entered for the defendants on May 23, 1994. Judge Melville did not rule on whether the other violations noted in Mr. Carbone's report of April 12, 1994 rendered the apartment unfit and uninhabitable.
The court has reviewed the photographs and testimony offered relating to the conditions described and has read the transcript of the May 1994 trial as well as the other exhibits. The court considered the credibility of the witnesses. Jacobsen v. Jacobsen,177 Conn. 259, 263 (1979)[.]
The defendant, Basil Young, testified at length and offered CT Page 1198-DD numerous photographs which he stated showed the unfit and uninhabitable conditions of the premises.
Mr. Young also testified that he submitted to the plaintiff on November 1, 1993 at the effective date of the tenancy a written and signed rental application in which he stated that his prior address was 233 Benson Street, Bridgeport and that his then landlord was Maricka Young. He further stated that he had not been evicted for non-payment of rent. Mr. Young answered these questions in his own handwriting and signed the application under a written affirmation that the information furnished in the application was true and correct.
In fact Mr. Young had been recently evicted from his immediate former residence, at 42 Dean Place, Bridgeport, Ct., by his then landlord, Angelo Memoli, d/b/a Dean Place Associates. The court took judicial notice of that file entitled Dean Place Associates v. Basil Young and Yvette Young, SPBR 9212 23426. A judgment of immediate possession entered against the defendants on January 20, 1993 on the basis on non-payment of rent, the only count in the landlord's complaint. A final stay of execution was CT Page 1198-EE granted until October 31, 1993 and an execution was issued on November 1, 1993. Donald Gayle testified that the defendant's took possession of the premises at 337 Sylvan Street in the first week of November 1993. The court cannot give much, if any, credibility to Mr. Young's testimony or credit his photographs with the interpretations and inferences that the defendant's wish the court to draw.
Mr. Young was also asked by the plaintiff a series of questions concerning his immediate prior residence. Mr. Young, when asked such basic questions as the address of the residence, the dates of occupancy and the name of the landlord, answered that he did not recall. The court kept track of the "I don't recall" responses and stopped when the number reached ten. These answers substantially weakened the credibility of Mr. Jones.
The court, as the trier of fact, is the sole judge of a witness's credibility. The court is free to find the defendant's version of the events less credible than that offered by the plaintiff. State v. Salz, 226 Conn. 20, 38 (1993) "It is the sole province of the trial court to weigh and interpret the evidence CT Page 1198-FF before it and to pass upon the credibility of witnesses." Smith v.Smith, 185 Conn. 491, 493 (1981) The credibility of witnesses is entirely a matter for the discretion of the trier who alone can observe the witnesses and draw inferences from their demeanor.Piantedosi v. Floridia, 186 Conn. 275, 277 (1982) The court must weigh and interpret the evidence before it. Smith v. Smith, supra 3493. The court, as a trier, "is not required to believe testimony merely because it is not directly contradicted." State v. Dudla,190 Conn. 1, 7 (1983), Stanton v. Grigley, 177 Conn. 558, 563
(1979).
With these rules in mind the court now turns to the defendant's four special defenses.
One special defense claims that the "complaint fails to state a cause of action upon which relief may be granted in that Notice to Quit for non-payment under a month-to-month tenancy must occur only during the month of non-payment." Although this issue was not briefed, it appears to allege the "too early/too late" defense common in summary process cases before the statutes were recently amended. Under the former status of the law in a month to month CT Page 1198-GG tenancy a Notice to Quit was defective if served at the beginning of the next month since it was not served during the existing tenancy (too late) and would also be defective to terminate the current month to month tenancy if served before the expiration of the nine day statutory grace period of C.G.S. Section 47a-15a (too early). Secretary of Housing and Urban Development v. Alveria,
SNBR-5, December 1, 1982 (Driscoll, J.), Alexandre v. Darden,1991 Ct. Sup. 4061, May 31, 1991 (Berger, J.).
C.G.S. Section 47a-23(d) now permits a notice to quit in the type of case before this court, to be served in the month following the expired month of a month to month tenancy as well as in the current month of the month to month tenancy. P.A. 93-185 effective October 1, 1993 added subsection (d) to C.G.S. Section 47a-23
stating, "With respect to a month-to-month tenancy of a dwelling unit, a notice to quit possession based on nonpayment of rent shall, upon delivery, terminate the rental agreement for the month in which the notice is delivered, convert the month-to-month tenancy to a tenancy at sufferance and provide a proper basis for a summary process action notwithstanding that such notice was delivered in the month after the month in which the rent is alleged CT Page 1198-HH to be unpaid." C.G.S. Section 47a-23(d), (Note: Two subsections (d) in 1994 codification)
The complaint alleges that the defendants had failed to pay the rent due on the first day of each month from April 1994 through and including September 1994. The Notice to Quit was served on August 31, 1994. The date of service of the Notice to Quit is the date of issuance of the Notice to Quit and not the date the Notice was signed or dated. Whitt v. Dark, H-279, July 1, 1981, (Brennan, J.), Alexandre v. Darden, supra 4062. Therefore the Notice to Quit is too late for the months of April, May and June 1994 and too early for the month of September 1994. C.G.S. Sections 47a-23(d) and47a-15a. The Notice to Quit is proper and in compliance with the statute as modified for non payment for the months of July 1994 and August 1994. The issues on this special defense are found for the plaintiff.
In the next special defense the defendants have stated "This eviction is being brought against the tenants because the tenants contacted the landlord and Housing Officials with regards to complaints about the premises." The defendant did not plead the CT Page 1198-II statutory citations as required by P.B. Section 109A(a). "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." P.B. Section 109A(a). In accordance with P.B. Section 164 failure to comply with P.B. Section 109A(a) could prevent the court from considering the special defense. DuBose v. Carabetta, 161 Conn. 254, 260 (1971). This court will, in this case, consider the special defense as pleaded. The defendant appears to be relying on C.G.S. Sections47a-20 and 47a-33. The defendant has not sustained their burden of proof by competent believable evidence as to either retaliatory eviction statute.
C.G.S. Section 47a-33 requires proof that the plaintiff's actions to evict were "solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city . . ." The tenant's burden is to show the landlord's motive to evict. The evidence clearly showed that the plaintiff started the original eviction action before the first inspection by Mr. Carbone or any other official. The action was based on non payment of the April 1994 rent due on April 1, 1994. CT Page 1198-JJ Since that time the plaintiff has been trying to gain access and repair the premises as well as collect rent from the defendants. The evidence clearly demonstrates that the defendants have not paid any money to the plaintiff since March 1994. Therefore the court concludes that the plaintiff did not proceed with this eviction or the prior eviction "solely" because the defendants contacted code officials of the City of Bridgeport. Alteri v. Layton, 35 Conn. Sup. 261,266 (1979), Groton Townhouse Apts. v. Covington, 38 Conn. Sup. 370,372 (1982).
C.G.S. Section 47a-20 does not apply to actions for non payment of rent. Steinegger v. Fields, 34 Conn. Sup. 594, 597
(1987). The retaliatory eviction defense under C.G.S. Section 47a-20
is not a right given to tenants, rather a limitation upon remedies of landlords intended to protect tenants who had complained of housing code violations. Alteri v. Layton, supra 266. The repairs referred to in the retaliatory defense statutes of C.G.S. Section 47a-20 and 47a-33 must be those that are required to conform a dwelling to basic structural, mechanical and housing code regulations. Visco v. Cody, 16 Conn. App. 444, 454 (1988),Steinegger v. Rosario, 35 Conn. Sup. 151, 156 (1979), Tucker v.CT Page 1198-KKLopez, 38 Conn. Sup. 67, 69 (1982), Evergreen Corporation v. Brown,35 Conn. Sup. 549, 552 (1978), Alteri v. Layton, supra 267, Murphyv. Baez, 40 Conn. Sup. 470, 473 (1986). This court, for the reasons set forth later in this decision, has concluded that the complained of defects did not rise to the level to render the premises unfit and uninhabitable and did not violate basic structural, mechanical and housing code regulations. Therefore the defendant has failed to sustain their burden of proof on either of these two "retaliatory eviction" statutes.
The next special defense claims that "the action is barred by the doctrine of res judicata and collateral estoppel." Although commonly pleaded together and referred to in one breath at oral argument, the two legal concepts are different and should have been raised in two separate special defenses. P.B. Section 165. Since the defendant has failed again to sustain their burden of proof under either of the two pleaded theories, this court will not separately render an opinion on each theory.
Res judicata is commonly known as "claim preclusion.' Collateral estoppel is commonly known a "issue preclusion." CarolCT Page 1198-LLManagement Corp. v. Board of Tax Review, 228 Conn. 23, 32 (1993). In essence both theories "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." State v. Ellis, 197 Conn. 436,464 (1985). The defendants are claiming that Judge Melville in his May 23, 1994 decision found facts and rendered a decision which act as res judicata and collateral estoppel as to the issues and claims raised in this case. Judge Melville did consider Mr. Carbone's April 12, 1994 report but only decided that the lack of heat due to the inoperable furnace was applicable. "A lack of heat during the winter season or during any season when the temperature falls below the statutory or regulatory limits is a violation of the health code . . . and constitutes a factor that materially affects the health and safety." Gayle v. Young, SPBR-26840, transcript page 60, May 23, 1994 (Melville, J.). Since Judge Melville found for the defendant on that issue he did not reach a decision on the other issues. "I don't need to make and will not make any other findings with regard to the uninhabitability of the premises." Exhibit F, transcript of May 23, 1994, page 61.
Res judicata or claim preclusion prevents a litigant from CT Page 1198-MM reasserting a claim that has already been decided on the merits.Crochiere v. Board of Education, 227 Conn. 333, 343 (1993). This doctrine along with its companion doctrine of collateral estoppel "protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." Virgo v. Lyons,209 Conn. 497, 501 (1988).
Collateral estoppel or issue preclusion prevents a party from relitigating an issue that has been determined in a prior suit.Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392, 402 (1988), Statev. Ellis, supra 465. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. Virgo v. Lyons, supra 501, P.X. Restaurant, Inc. v. Windsor, 189 Conn. 153, 161 (1983). "Collateral estoppel is that aspect of the doctrine of res judicata which serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction." P.X. Restaurant, Inc. v. Windsor, supra 161, State v. Wilson, 180 Conn. 481, 485 (1980), Carol Management,CT Page 1198-NNCorp. v. Board of Tax Review, supra 32. The party or his privie against whom collateral estoppel is asserted therefore must have been given a full and fair opportunity to litigate in a prior proceeding the issue sought to be precluded in the subsequent proceeding. Brockett v. Jensen, 154 Conn. 328, 338 (1966).
Although the parties were the same, the premises were the same, the code deficiencies were the same and the parties had the opportunity to litigate those issues and actually did litigate those issues fully, the decision only concerned one limited issue. The issue actually decided was; Did a defective furnace which did not provide at least 65 degrees of heat to the premises in April 1994 violate C.G.S. Section 47a-4a and 47a-7(a) thus preventing the landlord from collecting rent for that month? Judge Melville only decided the lack of heat in April 1994. The issues in this case are different. Did the plaintiff fail to provide at least 65 degrees of heat to the premises in August 1994? It so, was the premises rendered unfit thereby? Were the other items on Mr. Carbone's April 12, 1994 report sufficient to sustain the defendant's burden of proof to render the premises unfit in August 1994? CT Page 1198-OO
The consideration and decision of different issues in a trial including the same parties, same premises and similar issue, is not sufficient to invoke the application of res judicata and collateral estoppel as defenses. P.X. Restaurant, Inc. v. Windsor, supra 162. The two principle issues set forth in this case are no heat in August 1994 and the other code violations not decided by Judge Melville. The August 1994 facts were not actually litigated and the other matters were pleaded and tried. Those other matters were not "actually litigated" as required by collateral estoppel. "An issue is `actually litigated' if it is properly raised in the pleadings or otherwise submitted for determination and in fact determined."Carol Management, Corp. v. Board of Tax Review, supra 32-33, 1Restatement (Second) Judgments, 27, comment (d) (1982). An issue is necessarily determined if, "in the absence of a determination of the issue, the judgment could not have been validly rendered."Jackson v. R.G. Whipple Inc., 225 Conn. 705, 714-715 (1993),[.]
Therefore the defendants have not sustained their burden of proof of proof of the defenses of res judicata and/or collateral estoppel. CT Page 1198-PP
The final special defense raises the unfit and uninhabitable defenses of C.G.S. Sections 47a-4a and 47a-7(a). A brief discussion of the law is needed. The defendant's must prove that the premises were in such a state in the month of nonpayment so as to render the it unfit and uninhabitable. Alteri v. Layton, supra 267. The defects must materially and substantially affect the tenants use of the premises. It is not enough for the tenant to show that the premises are not in full code compliance. The rule established byAlteri v. Layton was modified in a C.G.S. Section 47a-4a
situation. The requested repair involved must be "one necessary to put and keep the premises in a fit and habitable condition." C.G.S.Section 47a-7(a)(2), Visco v. Cody, supra 453. If minor repairs were sufficient to trigger the statutory defenses of unfit and uninhabitable "what was intended as a shield for the benefit of tenants would be metamorphosed into a sword to deprive landlords of their property." Visco v. Cody, supra 453. Mere technical or cosmetic violation of governmental codes are not sufficient to rise to the level of the defense of unfit and uninhabitable. Tucker v.Lopez, supra 69, Steinegger v. Rosario, supra 552, Evergreen v.Brown, supra 552, Arroyo v. Fernandez, SPWA-00076, December 9, CT Page 1198-QQ 1982, Visco v. Cody, supra 451.
"To be successful a tenant must demonstrate actual and serious deprivation of the use contemplated by the parties to the lease."DiBiaso v. Gorgiulo, 1993 Ct. Sup. 6721, 6732, July 9, 1993 (Riddle, J.), Conference Center. Ltd. v. TRC, 189 Conn. 212, 221
(1983). The considerations to be reviewed in a finding of unfit and uninhabitability are 1) the situation of the parties, 2) the character of the premises, 3) the use to which the tenant actually or intends to put them and 4) the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed. Conference Center, Ltd. v. TRC, supra 221. The code violations must be substantial and a serious deprivation to health and safety for those to be grounds for a rent abatement or sanctions of any sort. DiBiaso v. Gorgiulo, supra 6732, Visco v.Cody, supra 446, 450, Centrix Management v. Burkes,1992 Ct. Sup. 9112, 9114 (September 25, 1992), Fugua v. Barnes, H-252, (November 20, 1980), (O'Connell, J.), Housing Authority, Hartford v.Williams, 1992 Ct. Sup. 9310, 9313, (October 8, 1992) (Holzberg J.), Wooster v. Criscuolo, 1992 Ct. Sup. 3421, 3422, (April 15, 1992) (Leheny, J.), Biagioni v. Starker, 1994 Ct. Sup. 3788, 3789
CT Page 1198-RR (April 6, 1994) (Holzberg, J.)
The tenant has the right to request the landlord to make cosmetic repairs but the tenant cannot avoid eviction, using C.G.S. Sections 47a-4a and 47a-7(a) or the retaliatory eviction defenses under C.G.S. Sections 47a-20 and 47a-33 as a shield. Visco v. Cody,
supra 451.
The plaintiff is relying primarily on the nonpayment for the month of August 1994 to sustain his eviction action. Paul Carbone testified that he does not turn on his own furnace during the month of August. He also testified that the temperature during August 1994 did not go below the 65 degrees mandated by the City of Bridgeport. There was testimony that the furnace was not in operating condition after Mr. Carbone's April 12, 1994 report. The plaintiff offered evidence of repairs made to the furnace after April 1994. There was testimony concerning a statement made by the furnace serviceman after April 1994 that the furnace was operable. Furthermore evidence and bills were offered which indicated that on December 11, 1992 the plaintiff replaced the existing furnace with a new heating system at a cost of over $3,000.00. The court CT Page 1198-SS therefore draws the reasonable inference that the new heating system was in operating condition, but needed some adjustment and repair on April 12, 1994. The defendants have not sustained their burden of proof that the furnace did not work in August 1994. The defendants have not sustained their burden of proof that a non functioning furnace in Bridgeport, Connecticut in August when the temperature usually doesn't go below 65 degrees entitles the tenant the benefit of C.G.S. Section 47a-4a.
The defendant claims that the remaining code violations noted in Mr. Carbone's April 12, 1994 report, Exhibit A, either individually or in combination render the premise unfit. The existence of a defect which would render a premises unfit at one period of time does not render the premises unfit at another period of time. Johnson v. Fuller, 190 Conn. 552, 556 (1983) "Whether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed." Thomas v. Roper, 162 Conn. 343, CT Page 1198-TT 347 (1972), Johnson v. Fuller, supra 556-557.
Exhibit A states as follows;
"VIOLATIONS;
General:
Furnace inoperable.
Loose handrail — front porch.
Interior:
1st floor:
Front bedroom — exposed wire and missing wall plate cover.
Living room — missing outlet; extension cords being used.
Front bedroom door required. CT Page 1198-UU
Bathtub slow draining.
Improper fitting bathroom door.
Improper fitting closet door — rear bedroom.
Kitchen cabinets broken.
Kitchen faucets leak.
No heat in apartment — restore by 4/14/94.
Inspector; Paul Carbone
pm"
The first and last items in the report, "furnace inoperable" and "no heat in apartment — restore by 4/14/94" have already been discussed. Mr. Carbone testified that the other violations would not render the apartment unfit. Furthermore on the furnace and the CT Page 1198-VV no heat complaint, Mr. Carbone issued a separate order also dated April 12, 1994 directed solely to the heat and furnace situation citing code sections and the penalties for the continued violation of those two deficiencies. No such order or letter was issued regarding the other "violations." Nor did Mr. Carbone engage in any other enforcement activity concerning the other "violations." He also testified that as to some of the items on the list it is impossible for him to determine if the tenant was responsible or the landlord was responsible for creating or maintaining the condition. Therefore the court must conclude that although the items may have been in violation of various sections of the Bridgeport codes, they were cosmetic, technical and did not rise to the level rendering the apartment unfit and uninhabitable. Visco v.Cody, supra 567.
Photographs demonstrated certain other facts which support the court's conclusion. There were no photographs of the front handrail and no evidence was offered by the defendant that the handrail in August was in the same condition as noted in April. The front bedroom wiring problems are shown by the photographs to be the mere lack of a simple wall plate cover found in any hardware store or CT Page 1198-WW local department store. No danger was shown in these photos. Likewise an extension cord use was shown in one photograph connected to a wall outlet located in a closet. No other photos of the living room were offered to indicate how many outlets were actually in the living room and whether the living room consisted of a foyer, connected dining room or foyer whose outlets could possibly be counted in code compliance. No testimony was offered as the number of code outlets required. The door problems throughout the apartments as well and the drains and faucet problems could very well have been caused by the lack of general maintenance required by the tenant or even caused by the tenant's own action. Since the court has found a general lack of credibility with Mr. Young's evidence, the defendant's have failed to sustain their burden of proof in that regard. No photos of broken kitchen cabinets were offered. The court is free to draw an inference unfavorable to the defendant by reason of no such evidence being offered. Secondino v. New Haven Gas Co., 147 Conn. 672, 675 (1961)
Although not necessary for the decision in this matter, some time should be spent on the issue of whether the tenant's actions preventing access to the premises for repairs can prevent the CT Page 1198-YY tenant from successfully raising the statutory defense of unfit and uninhabitability in a non payment of rent summary process action.
The theories of waiver and estoppel are relevant starting points for this discussion since there appears to be no cases on point. Waiver (implied waiver) and estoppel (estoppel by conduct) are so similar that they are nearly indistinguishable. Novella v.Hartford Accident Indemnity Co., 163 Conn. 552, 564 (1972) The difference between the two legal theories is easier to distinguish when dealing with express waivers. Novella v. Hartford Accident Indemnity Co., supra 562. There is no evidence of an express waiver and the plaintiff is relying on the conduct of the defendants to show implied waiver and estoppel by conduct. Therefore under most circumstances "the dividing line between waivers implied from conduct and estoppel oftentimes becomes so shadowy that . . . the two terms have come to be quite commonly used interchangeably. When the term waiver is so used, however, the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate, not a pure waiver but one which has come into an existence of effectiveness through the application of the principles underlying estoppel . . . The apparent difference CT Page 1198-ZZ between certain of the cases becomes one of terms rather than of fundamental principle." S.H.V.C., Inc. v. Roy, 188 Conn. 503. 510 (1982). The conclusion of waiver and/or estoppel is one of fact for the trier. Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 684 (1955)
Waiver is the intentional relinquishment of a known right.Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 257 (1964), Brauer v.Freccia, 159 Conn. 289, 295 (1970), S.H.V.C., Inc. v. Roy, supra 510. "Waiver need not be express, but may consist of acts or conduct from which a waiver maybe implied . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." O'Hara v. State, 218 Conn. 628, 641 (1991), WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 252 (1972). The elements of waiver are 1) the existence or a right or defense, 2) the opportunity to apply and use that right or defense, 3) the knowledge of the ability to use that right or defense, 4) the actions of that party who possess that right or defense which amount to a relinquishment of that right. S.H.V.C., Inc. v. Roy,
supra 510.
Waiver in the Home Improvement act setting holds, "Assuming CT Page 1198-AAA that implied waiver may avoid the right to rely on the statute, in order to sustain such a claim, the plaintiff would still have to make a showing that the defendants knew of their right to invalidate the contract under the act before they could waive its protection." Wadia Enterprises, Inc. v. Hirschfeld, supra 253. Although there is no such case in a landlord-tenant situation, the actions and admissions of the tenant that the premises were habitable at a particular time was decisive in Johnson v. Fuller,
supra 558, ruling that the landlord then had no duty to repair at that time under C.G.S. Section 47a-7(a).
In a landlord-tenant setting it is possible for the elements of waiver to exist to prevent a tenant from raising the unfit defense when the tenant has failed to allow the landlord access to make the code correcting repairs.
Estoppel also known as equitable estoppel arises when one party has done or said something intended or calculated to induce another to believe in the existence of certain facts and to act on that belief to their detriment. Bozzi v. Bozzi, 177 Conn. 232, 242
(1979), Spear-Newman, Inc. v. Modern Floors Corporation, 149 Conn. 88, CT Page 1198-BBB 91 (1961) A reasonable reliance upon the misleading conduct, resulting in some detriment to the party claiming the estoppel is also required. Novella v. Hartford Accident Indemnity Co., supra 564 Under this analysis a tenant's promise of access to make repairs when the actual access is later denied thus causing the landlord to suffer the detriment of inability to remedy a code violation would appear be an appropriate application of equitable estoppel preventing the tenant from raising the defense of C.G.S. Section 47a-4a. "It is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth and that he not only did not know of the true state of things but also lacked any reasonable available means of acquiring knowledge." State v. American News Co., 152 Conn. 101, 114 (1964),Linahan v. Linahan, 131 Conn. 307, 327 (1944) Steinegger v. Fields,
supra 539. In a landlord-tenant setting it would appear that the landlord should, under the circumstances of the tenant's refusal of entry for repairs, file and obtain an order of access from the Superior Court under C.G.S. Section 47a-18, when a tenant refuses access under C.G.S. Section 47a-16. The landlord has remedies underC.G.S. Section 47a-15 for tenants breach. Failing those actions, the landlord would be hard-pressed to establish the necessary CT Page 1198-CCC showing of "lacking any reasonable means."
In the summary process area two other considerations occur; one statutory and the other equitable. C.G.S. Section 47a-16(a),
the first consideration, requires the tenant to permit access to the premises to the landlord at reasonable times to make necessary or agreed to repairs. Corresponding is the landlord's duties to make those repairs as required by statute or suffer the detriment imposed upon it by C.G.S. Section 47a-4a. Statutes should be considered as a whole, reconciling their separate parts so that a reasonable overall interpretation is achieved. Visco v. Cody, supra 452, Dukes v. Durante, 192 Conn. 207, 214 (1984). Statutes must be construed to read as a consistent body of law. Police Department v.State Board of Labor Relations, 225 Conn. 297, 303 (1993) "In construing a statute, common sense must be used, and the courts will assume that the legislature intended to accomplish a reasonable and rational result . . . . A statute . . . should not be interpreted to thwart its purpose." Conaci v. Hartford Hospital,36 Conn. App. 298, 301 (1994). Board of Education v. State Board ofLabor Relations, 217 Conn. 110, 126-127 (1991). A statute must not be read in such a manner as to reach a bizarre result. "Such a CT Page 1198-DDD bizarre result could not have been intended by the legislature. The law favors a rational statutory construction and we presume that the legislature intended a sensible result." State v. Jiminez,228 Conn. 335, 341 (1994). Conaci v. Hartford Hospital, supra 304. "The meaning of a particular phrase in a statute is to be determined by reference to the use of that phrase in other parts of the same statute." Doe v. Institute of Living, Inc., 175 Conn. 49,57 (1978).
The statutory scheme of landlord and tenant laws must be read as a consistent whole. Powers v. Ulichny, 185 Conn. 145, 149
(1981), creating a harmonious body of law. Berger v. Tonken,192 Conn. 581, 589 (1984) A meaning should not be ascribed to it which would render the meaning of those other uses difficult or bizarre."State v. Campbell, 180 Conn. 557, 563 (1980). The statute must be construed with common sense. State v. Privitera, 1 Conn. App. 709,721 (1984), Shelby Mutual Ins. Co. v. Della Ghelfa, 3 Conn. App. 432,438 (1985), aff'd 200 Conn. 630 (1986). To permit the tenant to violate the reasonable entry statute of C.G.S. Section 47a-16(a) and at the same time take advantage of the repair obligation statute of C.G.S. Section 47a-4a would be such a bizarre result. CT Page 1198-EEE
As to the second equitable consideration, the Supreme Court has imposed on both landlord and tenant an implied covenant of good faith and fair dealing. Warner v. Konover, 210 Conn. 150, 154
(1989), Neiditz v. Housing Authority, 43 Conn. Sup. 283, 294
(1994), Affirmed 231 Conn. 598 (1995). The tenancy in this case is subject to the tenant's obligation to grant access to the landlord and its agents pursuant to C.G.S. Section 47a-16 so the landlord can fulfill his repair duties under C.G.S. Section 47a-7a. UnderWarner v. Konover it would appear both landlord and tenant owe each other a duty of good faith compliance with those statutory lease requirements. The implied covenant of good faith and fair dealing invokes equitable principles. Warner v. Konover, supra 155-156. To be entitled to equitable remedies the tenant must have clean hands.F.B. Fountain Co. v. Stein, 97 Conn. 619, 626 (9122), y Fellows v.Martin, 217 Conn. 57, 67 (1991), Brauer v. Freccia, supra 296. A tenant cannot profit by his wrongdoing and obtain statutory or common law benefits when he has violated lease terms. S.H.V.C.,Inc. v. Roy, supra 508.
Therefore under the four theories of implied waiver, estoppel CT Page 1198-FFF by conduct, statutory consistency and clean hands it appears that the tenant cannot avail himself of the statutory defense of C.G.S. Section 47a-4a unless and until he has complied with the statutory obligation of C.G.S. Section 47a-16(a) by permitting the landlord reasonable access to the premises for the purpose of making landlord required repairs under C.G.S. Section 47a-7(a).
Accordingly judgment for immediate possession will enter in favor of the plaintiff, Donald Gayle, as against the defendants, Basil Young and Yvette Young.
BY THE COURT
KEVIN TIERNEY J.