[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this summary process action in which plaintiff seeks possession of the premises based upon termination of a lease, defendant interposes the special defenses of retaliatory eviction in reliance on C.G.S. §§ 47a-20 and 47a-33.
Since plaintiff clearly proved a lease between the parties that terminated by its terms, and defendant, after a notice to quit, continued in possession, which facts defendant Caroline Wright*
concedes, the sole issue before the court is defendant's special defenses.
Section 47a-20 provides:
 "A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit. . . . within six months after (1) the tenant has in good faith attempted to remedy by any lawful means, including contacting officials of the state or of any town, city. . ., any condition constituting a violation. . . . of the housing and health ordinances of the municipality wherein the premises . . . lie; (2) any municipal agency official has filed a notice, complaint or order regarding such a violation; (3) tenant has in good faith requested the landlord to make repairs. . . ."
Section 47a-20a provides that notwithstanding the provisions of § 47a-20, landlord may maintain an action for possession if"the landlord seeks to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant before the tenant's complaint."
As noted in Alteri v. Layton, 35 Conn. Sup. 261, 264-65 (1979), § 47a-20 is recognized not as a right given to tenants but as a limitation of remedies of the landlord. If the tenant establishes that the landlord initiated a summary process action within six months after tenant has a in good faith requested repairs, filed a complaint for violation of the housing code with a local official, or a local official has filed a notice regarding such violation, then a presumption of retaliatory eviction arises. The presumption is rebuttable by landlord producing "substantial countervailing evidence "showing" a legitimate interest in the eviction." (id. p. 264).
The facts of this, case relating to the matter at issue are as follows: Defendants took possession of apartment 6B, Park Place CT Page 13293 Towers, 2 Park Place, Hartford, Connecticut, on or about July 25, 1998 pursuant to a one year written lease ending by its terms on July 31, 1999.
On March 8, 1999, defendant requested extermination; an exterminator came on March 18 and also plugged cracks and crevices. In early July 1999, defendant filed a request for inspection with Hartford department of licenses and inspection. There was no evidence defendant notified plaintiff of this request. The housing inspector made an inspection on July 14, 1999 and sent a registered letter to plaintiff, dated August 11, 1999, citing the following code violations: defective doorbell buzzer, roaches reported by tenant; plumbing toilet insecure; bathroom doors on sink hanging from hinges.
Plaintiff wrote to defendant on August 12, 1999 informing her a pest control vendor would come on August 19 and on that day all work noted on defendant's complaint to the housing inspector would be done. The exterminator came on the appointed day.
The Hartford housing inspector report noted a reinspection would be made on August 20, 1999 but the housing inspector could not say whether or not it was done and the code violations were corrected. Plaintiff could not produce a work order but its manager testified work orders are regularly fulfilled within three days.
The apartment was exterminated again on August 26, 1999 and the exterminator reported "no sightings."
Plaintiff served a notice to quit on defendant on July 17, 1999.
Clearly, defendant requested plaintiff to exterminate in March 1998 and contacted a Hartford housing inspector and reported housing code violations in July 1999, both within six months of plaintiffs notice to quit. The specific issue contested by the parties is whether or not those claimed defects was of sufficient importance to trigger § 47a-20 and create the presumption of retaliatory eviction.
Our law recognizes that not every request by a tenant for a repair or claim to a municipal official of a housing code violation can invoke § 47-20. As stated in Visco v. Cody,16 Conn. App. 444, 453 (1988). "If we were to construe "repairs' as CT Page 13294 meaning any repairs, no matter how minor, we would encourage the inequitable scenario where month-to-month tenancies are unilaterally transformed into six month tenancies on the basis of a request, albeit in good faith, for the replacement of a light bulb or the tightening of a washer in a leaky faucet. What had been intended as a shield for the benefit of tenants would be metamorphosed into a sword to deprive landlords of their property."
In Alteri v. Layton, supra, the court held "repairs" as used in § 47a-20, meant "substantial code violations . . . repairs required to conform a dwelling unit to basic structural, mechanical and housing code regulations . . ." (p. 267). The Appellate court inVisco v. Cody, supra, found that standard too high and a fair and equitable balancing of the rights of landlord and tenants led it to conclude "the protection afforded by § 47a-20(3) is not invoked unless the repair requested is one which is necessary to maintain the leased premises in a fit and habitable state." (p. 454).
In Alteri, a request to repair unclogged bathtub drain was held not to invoke § 47a-20. In Visco tenant's request of landlord to bleed a bathroom radiator, tighten bedroom windows and replace sash cords, weatherstrip the front door, fix some loose tiles and provide him with paint did not invoke § 47a-20(3).
This court interprets subsection 2 of § 47a-20, respecting a municipal official filing a notice, complaint or order of a housing code violation, similarly to the Visco interpretation of repairs in 47a-20(3), namely a violation that indicates a failure "to maintain the leased premises in a fit a habitable state."
In the case before this court, there was no evidence that defendant's complaints to the Hartford housing inspector in early July 1999 and the inspection of the premises by the inspector on July 14, 1999 came to the attention of plaintiff before the service of the notice to quit on July 17, 1999. Certainly, the housing inspector "s letter dated August 11, 1999 notifying plaintiff of housing code violations was received after July 17, 1999. But even if plaintiff had been apprised of defendant's complaints and the notice of violations, those complaints and claimed violations would not invoke § 47a-20. Relying on Visco, this court so finds as to repairs such as those here of defects in doorbell buzzer, insecure toilet, and bathroom sink doors hanging on hinges. CT Page 13295
The complaint of roaches is more serious and, moreover, made by defendant to plaintiff in March, 1999, within six months of the notice to quit. However, defendant's March complaint was promptly responded to by plaintiff. Defendant did not complain to plaintiff in July, but when plaintiff was informed of the condition by the Hartford housing inspector's letter of August 11, 1998, it again promptly sent out an exterminator on August 17 and again on August 26, who reported no insects. Although it is recognized that roach infestation can render a dwelling unfit and inhabitable, Steinegger v. Rosario, 35 Conn. Sup. 151, 157
(1979), such was not the situation here. Two complaints of roaches over a period of four months do not establish an infestation, and the prompt response of the plaintiff to any roach complaint minimized the condition to relative insignificance.
Thus, this court finds defendant has failed to produce evidence of requests for repair or notice of housing's code violations that trigger the presumption of retaliatory eviction under §47a-20.
Defendant also alleges a special defense under § 47a-33. That section provides:
 "In any action for summary process . . . it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials . . . of any town, city . . . any condition constituting a violation . . . of the housing or health ordinances of the municipality wherein the premises subject to the complaint lie."
The defendant has the burden of proof on this special defense. Based on the foregoing, the court concludes defendant has failed to meet this burden. Certainly there was no evidence plaintiff brought this action "solely" because of defendant's complaints.
Judgment may enter for the plaintiff for possession of the subject premises.
Robert Satter State Judge Referee