LARRY VISCO *v.* CLIFFORD CODY ET AL.
(6215)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 10—decision released September 27, 1988

*David A. Pels,* with whom, on the brief, was *Sheryl J. Sha'afi,* for the appellants (defendants).

*Clifton E. Thompson,* for the appellee (plaintiff).

SPALLONE, J. The defendants appeal from the judgment rendered in favor of the plaintiff in this summary process action. The sole issue presented is one of first impression: Whether the trial court erred in finding that the defendants' good faith requests for repairs did not successfully invoke the provisions of General Statutes § 47a-20 because the requested repairs were minor in nature. We find no error.

The relevant facts are not in dispute. In October, 1976, the plaintiff purchased an apartment building located at 149 Barbour Street in Hartford. The defendants, Clifford Cody and Elsie Cody, were tenants in the building at that time. The plaintiff and the defendants entered into an oral agreement for a month-to-month tenancy by the defendants, to begin on November 1, 1986. Clifford Cody testified that he first asked the plaintiff to perform specific repairs on the apartment in October of 1986, when the plaintiff first assumed ownership, and requested additional repairs at various times thereafter.

On April 14, 1987, the plaintiff caused a notice to quit, based on lapse of time, to be served on the defendants, advising them to quit possession of the premises on or before April 30, 1987. When the defendants did not vacate the apartment, the plaintiff, on May 12, 1987, initiated this summary process action. The defendants

answered on June 4, 1987, raising a special defense, pursuant to General Statutes § 47a-20,[1] that the summary process action was commenced within six months of the defendants' requests for repairs, and therefore, the action was barred.

The evidence at trial, adduced through the testimony of both the plaintiff and Clifford Cody, was that the defendants had made several requests for work to be done in their apartment and that the plaintiff had responded to these requests. The plaintiff testified that, at the defendants' request, he bled the bathroom radiator, tightened the bedroom windows and replaced the sash cords, weatherstripped the front door to eliminate drafts, fixed some loose tiles on the bathroom floor and provided paint to the defendants so that they could repaint the kitchen. On the basis of this evidence, the trial court determined that the protection afforded by General Statutes § 47a-20 had not been "triggered," because the requested repairs did not "relate to defects which materially affect health and safety." From this judgment, the defendants have appealed.

The defendants claim that the trial court erred in requiring them to prove more than a good faith request

---

[1] "[General Statutes] Sec. 47a-20 (Formerly Sec. 19-375a). RETALIATORY ACTION BY LANDLORD PROHIBITED. A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit, demand an increase in rent from the tenant, or decrease the services to which the tenant has been entitled within six months after: (1) The tenant has in good faith attempted to remedy by any lawful means, including contacting officials of the state or of any town, city or borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) *the tenant has in good faith requested the landlord to make repairs;* (4) the tenant has in good faith instituted an action under subsections (a) to (i), inclusive, of section 47a-14h; or (5) the tenant has organized or become a member of a tenants' union." (Emphasis added.)

for repairs.[2] The interpretation of § 47a-20 propounded by the defendants is that *any* good faith request for a repair, no matter how minor, invokes the provisions of the protective statute, effectively insulating the tenant from eviction for the next six months.[3] We cannot agree with such a broad reading of this particular provision.

Although we are cognizant of the principle that "[c]ourts must interpret statutes as they are written; *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980)"; *Lucarelli* v. *State,* 16 Conn. App. 65, 70, 546 A.2d 940 (1988); we are also bound by our duty to

---

[2] Although the defendants framed the issue raised on appeal as "[w]hether the Court erred in finding that it was the defendants' burden to prove substantial housing code violations in order to sustain a defense under Connecticut General Statutes § 47a-20," we note that the standard used by the trial court was *not* whether a "substantial housing code violation" existed. See *Alteri* v. *Layton,* 35 Conn. Sup. 261, 408 A.2d 18 (1979), discussed infra.

[3] The insulation from eviction provided by § 47a-20 is not impregnable. General Statutes § 47a-20a provides: "ACTIONS DEEMED NOT RETALIATORY. (a) Notwithstanding the provisions of section 47a-20, the landlord may maintain an action to recover possession of the dwelling unit if: (1) The tenant is using the dwelling unit for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent; (2) the landlord seeks in good faith to recover possession of the dwelling unit for immediate use as his own abode; (3) the condition complained of was caused by the wilful actions of the tenant or another person in his household or a person on the premises with his consent; or (4) the landlord seeks to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant before the tenant's complaint.

"(b) Notwithstanding the provisions of section 47a-20, a landlord may increase the rent of a tenant if: (1) The condition complained of was caused by the lack of due care by the tenant or another person of his household or a person on the premises with his consent or (2) the landlord has become liable for a substantial increase in property taxes, or a substantial increase in other maintenance or operating costs not associated with his complying with the complaint, not less than four months before the demand for an increase in rent, and the increase in rent does not exceed the prorated portion of the net increase in taxes or costs.

"(c) Nothing in this section or section 47a-20 shall be construed to in any way limit the defense provided in section 47a-33."

" 'avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain.' " *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984), quoting *La Providenza* v. *State Employees Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979). We do not believe that a literal definition of the word "repairs," as urged by the defendants, yields a "rational and sensible result" when viewed in context with the other statutory provisions of our landlord and tenant law embodied in title 47a of the General Statutes.

General Statutes § 47a-7 sets forth the responsibilities of a landlord to his tenants.[4] As well as complying with all applicable building and housing codes of the state or any political subdivision thereof, a landlord is

[4] General Statutes § 47a-7 provides in pertinent part: "LANDLORD'S RESPONSIBILITIES. (a) A landlord shall: (1) Comply with the requirements of chapter 3680 and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be the responsibility of the tenant; (3) keep all common areas of the premises in a clean and safe condition; (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him; (5) provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal; and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat except if the building which includes the dwelling unit is not required by law to be equipped for that purpose or if the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection.

"(b) If any provision of any municipal ordinance, building code or fire code requires a greater duty of the landlord than is imposed under subsection (a) of this section, then such provision of such ordinance or code shall take precedence over the provision requiring such lesser duty in said subsection."

mandated to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." General Statutes § 47a-7 (a) (2). The remedies available to a tenant in the event of the landlord's dereliction of these statutory duties are various: the tenant may withhold his rental payment, § 47a-4a;[5] the tenant may initiate an action to compel the landlord to perform his legal duties, § 47a-14h;[6] or the tenant may interpose the landlord's noncompliance as a defense in a summary process action, §§ 47a-20 and 47a-33.[7]

---

[5] "[General Statutes] Sec. 47A-4a. EFFECT OF FAILURE TO COMPLY WITH SECTION 47A-7. A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with section (a) of section 47a-7." See *Pediment Homes, Inc.* v. *Russell,* Appellate Session of the Superior Court, Docket No. 709 (February 15, 1980); *Steinegger* v. *Rosario,* 35 Conn. Sup. 151, 402 A.2d 1 (1979).

[6] General Statutes § 47a-14h provides in pertinent part: "ACTION BY INDIVIDUAL TENANT TO ENFORCE LANDLORD'S RESPONSIBILITIES. PAYMENT OF RENT INTO COURT. (a) Any tenant who claims that his landlord has failed to perform his legal duties, as required by section 47a-7, may institute an action in the superior court having jurisdiction over housing matters in the judicial district in which he resides to obtain the relief authorized by this section and sections 47a-20 and 47a-68. No tenant may institute an action under this section if a valid notice to quit possession or occupancy based upon nonpayment of rent has been served on him prior to his institution of an action under this section or if a valid notice to quit possession or occupancy based on any other ground has been served on him prior to his making the complaint to the agency referred to in subsection (b) of this section, provided any such notice to quit is still effective."

[7] "[General Statutes] Sec. 47a-33. (Formerly Sec. 52-540a.) DEFENSE THAT ACTION IS RETALIATORY. In any action for summary process under this chapter or section 21-80 it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city, borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any of the provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie. The obligation on the part of the defendant to pay rent or the reasonable value of the use and occu-

With regard to the first two forms of relief, the tenant's ability to recover is not automatic once he has alleged a breach of the landlord's statutory duty. For example, before a tenant can initiate an action pursuant to § 47a-14h, he must allege that within the previous twenty-one days he lodged a complaint concerning the condition of the premises with a municipal agency. General Statutes § 47a-14h (b) (5); see generally *Dugan* v. *Milledge,* 196 Conn. 591, 494 A.2d 1203 (1985). Similarly, for a tenant to make a successful claim that he had the right to withhold payment of rent, he must show that the landlord's failure to comply with § 47a-7 (a) "materially affects his safety"; *Tucker* v. *Lopez,* 38 Conn. Sup. 67, 69, 457 A.2d 666 (1982); or has rendered the premises "uninhabitable." *Steinegger* v. *Rosario,* 35 Conn. Sup. 151, 156, 402 A.2d 1 (1979). Furthermore, to establish uninhabitability, the tenant needs to do more than assert a unilateral, self-serving statement that the premises are untenantable. *Evergreen Corporation* v. *Brown,* 35 Conn. Sup. 549, 552, 396 A.2d 146 (1978) (suggesting that a tenant "utilize the broad range of municipal boards, agencies, and commissions" to remedy defects).

In light of the fact that "the sanctions in these sections are not triggered until and unless evidence is adduced at trial establishing that there is a substantial violation or series of violations of housing and health

---

pancy of the premises which are the subject of any such action shall not be abrogated or diminished by any provision of this section.

There are two significant differences between this provision and § 47a-20: (1) under this provision, the tenant must have registered a complaint to some municipal agency or made some equivalent effort to remedy the condition, whereas § 47a-20 (3) allows a complaint to be made to the landlord directly; and (2) this provision permits a tenant to raise retaliation as an affirmative defense, which the tenant must then prove by a preponderance of evidence, whereas § 47a-20 establishes retaliation as a presumption, if a summary process action is initiated within six months of a complaint, which the landlord must then successfully rebut. See *Mangiafico* v. *Saunders,* Appellate Session of the Superior Court, Docket No. 900 (January 25, 1980).

codes creating a material risk or hazard to the occupant," P. Marzinotto, Connecticut Summary Process Manual, p. 118, citing *Evergreen Corporation* v. *Brown,* supra; *Arroyo* v. *Fernandez,* Superior Court, judicial district of Waterbury, Housing Session, Docket No. SPWA-00076 (December 9, 1982); the defendant's assertion that a good faith request for *any* repair invokes the application of § 47a-20 is overly simplistic.[8]

If we were to adopt the defendants' argument, we would have to acknowledge a greater duty to make repairs as set forth in § 47a-20 than that which is specified in § 47a-7 (a). The latter obliges a landlord to maintain his leased premises in a fit and habitable condition; the former, under the defendants' construction, would also oblige the landlord to make any cosmetic or aesthetic repairs, solely at the tenant's good faith behest. This is not to say that a tenant does not have the right to request aesthetic repairs; rather, the tenant cannot avoid eviction, using § 47a-20 as a shield, on the grounds that he requested such repairs in good faith. Any other result would effectively prevent a landlord from recovering possession of his property based on a possible defect in the leased premises which he had no statutory duty to repair, and would, therefore, be anomalous indeed. We must not look at the single word "repairs" in isolation, to the exclusion of the remainder of that provision or to the exclusion of interrelated legislation. "What appears to be clear statutory language should not be read to arrive at an 'ambiguous or unreasonable result' or to 'defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose.' *State* v. *Delafose,* [185

---

[8] As for § 47a-33, before the tenant may raise retaliation as an affirmative defense, he must establish that an attempt was made to remedy "by lawful means" any condition which was a violation of the state statutes or of a municipal code, including lodging a complaint with a municipal agency. See footnote 7, supra.

Conn. 517, 522, 441 A.2d 158 (1981)]. Statutes should be considered as a whole, reconciling their separate parts so that a reasonable overall interpretation is achieved. *Dukes* v. *Durante,* [supra, 214]. Furthermore, the meaning of a particular phrase in a statute is to be determined by reference to the use of that phrase in other parts of the same statute. *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 57, 392 A.2d 491 (1978); Sutherland, Statutory Construction (4th Ed. Sands) § 46.05. A meaning should not be ascribed to it which would render the meaning of those other uses difficult or bizarre; *State* v. *Campell,* 180 Conn. 557, 563, 429 A.2d 960 (1980); *Connecticut Natural Gas Corporation* v. *DPUC,* 1 Conn. App. 1, 4, 467 A.2d 679 (1983); and it must be construed with common sense. *State* v. *Privitera,* 1 Conn. App. 709, 721, 476 A.2d 605 (1984)." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 438, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52 (1986).

In *Alteri* v. *Layton,* 35 Conn. Sup. 261, 408 A.2d 18 (1979), the trial court, in a well reasoned opinion, rejected the defendant tenant's claim of retaliatory eviction, holding that the repair requested had to be one "required to conform a dwelling unit to basic structural, mechanical and housing code regulations . . . ." Id., 267, citing *Robinson* v. *Diamond Housing Corporation,* 463 F.2d 853, 865 (D.C. Cir. 1972); see also *Friske* v. *Miranda,* Superior Court, judicial district of Hartford-New Britain, Housing Session at New Britain, Docket No. SPN-7907-512-BE (September 11, 1979). The *Alteri* court reasoned that "[t]o enforce properly the statute in a meaningful manner requires a balancing of the interests of both landlord and tenant . . . . To accept the literal interpretation propounded by the defendant could effectively negate the summary process proceedings of Connecticut statutes. The legislature could not have intended, in such

an indirect fashion, to emasculate substantially a landlord's statutory right to the possession of his property." *Alteri* v. *Layton,* supra, 267.

We agree with the focus of the *Alteri* court on the delicate balance of the rights of tenants and landlords. On one hand, we must weigh the statutory right given to the landlord to regain possession of his property; on the other hand, we weigh the right of the tenant to remain in possession after requesting that defects in the premises be remedied. Unlike the *Alteri* court, however, we do not believe the repair at issue must be of a substantial code violation. An adequate and fair balancing of the rights involved may be achieved by requiring the requested repair to be one "necessary to put and keep the premises in a fit and habitable condition." General Statutes § 47a-7 (a) (2).

We conclude that this interpretation of § 47a-20 will further the intent of the legislature without giving an unfair advantage to either tenants or landlords. If we were to construe "repairs" as meaning any repair, no matter how minor, we would encourage the inequitable scenario where month-to-month tenancies are unilaterally transformed into six month tenancies on the basis of a request, albeit in good faith, for the replacement of a light bulb or the tightening of a washer in a leaky faucet. What had then been intended as a shield for the benefit of tenants would be metamorphosed into a sword to deprive landlords of their property. Conversely, if we were to adopt the standard enunciated in *Alteri,* a tenant would be forced to always report a defect first to a municipal agency in order to prove that a substantial code violation exists. Not only would this rule discourage tenants from attempting to rectify defects by dealing directly with their landlord, under less volatile circumstances than an official complaint, but it would also meld two separate provisions

of § 47a-20, creating a redundancy. See General Statutes § 47a-20 (1) and (3). We cannot assume that this was the intent of the legislature.

In conclusion, we hold that the protection afforded by § 47a-20 (3) is not invoked unless the repair requested is one which is necessary to maintain the leased premises in a fit and habitable state. This conclusion both advances the policy considerations underlying the enactment of the retaliatory eviction statute, "i.e., [the] protection of tenant attempts to secure safe, sanitary and decent housing"; R. Schoshinski, American Law of Landlord and Tenant § 12.9, p. 738 n.3; and it enables us to construe the statutory scheme of our landlord and tenant laws as a consistent whole; *Powers* v. *Ulichny,* 185 Conn. 145, 149, 440 A.2d 885 (1981); creating a "harmonious body of law." *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984). Whether or not the defect complained of goes to the tenantability of the property is a question of fact to be determined by the trier. See *Johnson* v. *Fuller,* 190 Conn. 552, 461 A.2d 988 (1983); *Shipman* v. *Carr,* 38 Conn. Sup. 393, 449 A.2d 187 (1982). Under the facts of this case, we cannot say that the trial court erred in determining that the repairs requested by the defendants were not necessary to keep the premises in "a fit and habitable condition." General Statutes § 47a-7 (a).

There is no error.

In this opinion the other judges concurred.