[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an action for back rent that the plaintiff claims the defendant owes for rental of a commercial condominium unit. The undisputed allegations are that on July 10, 1996, the plaintiff and defendant entered into a written lease for rental of Unit 25 in Building 3 of the South End Plaza in New Milford. There is also no dispute that the defendant stopped paying rent in September 1997 and that the amount of the unpaid rent claimed by plaintiff is $12,595. The only issues in dispute are whether the defendant was excused from paying the rent by virtue of three special defenses he alleges. In essence, the defendant claims in each of these defenses that conduct of the plaintiff was unreasonable and failed to comply with plaintiffs legal or lease obligations. For the reasons stated below, the court finds the issues in favor of the plaintiff.
The first special defense claimed by the defendant is that the plaintiff landlord failed to provide the defendant with copies of various permits for work done on the premises. The lease itself did not impose such an obligation on the plaintiff. The defendant testified that he had rented the condominium to use it as a place where he could begin a business for his son with severe disabilities. The lease contained an option to purchase, and the defendant hoped to own the site eventually and use it for providing vocational training to his son and other persons with disabilities so that they might one day enter the work force. Mr. Ward stated that he asked plaintiff for the names of the contractors who had done electrical work on the premises, and for copies of the unit's fire, zoning, and building permits. It was unclear from the testimony at trial why Mr. Ward needed these CT Page 15051 permits, other than his statement that he needed them to get a loan. The defendant never offered any testimony, however, that the unit had been cited by a governmental authority for non-compliance with or deviation from any sort of governmental building requirement. The defendant has cited no legal basis as to how his first special defense should defeat plaintiffs claim for back rent; nor is the court aware of any. Accordingly, the first special defense is insufficient to defeat plaintiffs claims.
The second special defense is that "[despite repeated requests, landlord has refused to make the building accessible for my handicapped son." In support of this defense, Mr. Ward testimony offered two main complaints: his main complaint was that the condominium complex did not have enough handicap parking spaces; and he also alleged that egress in and out of the unit was not handicap accessible. Mr. Ward testified that vehicles of other tenants and visitors to the complex often blocked his access to parking spaces in front of his unit. As a result, he said he would be unable to park in front of his unit, and that would make it difficult for him to get his disabled son out of the defendant's handicapped-equipped vehicle and into the condominium unit. He also complained that he had received a notice from the condominium association, which was offered as a defendant's exhibit at trial, that vehicles longer than twenty feet could not park in the front of unit. While Mr. Ward was unhappy with this notice, the court finds that it actually aided the defendant by preventing large vehicles from blocking his ability to park in front of his building, allow his son to exit the handicap vehicle, and for Mr. Ward then to park the vehicle elsewhere.
The evidence in this case included a court view of the unit, requested by by both parties, which has aided the court to evaluate this claim. The condominium unit has both a front and rear exit. The landlord had created and marked a handicap parking spot in front of the unit. There was no evidence offered that this handicap parking space was in any way legally deficient. The front entrance to the unit has a standard sized door, and there is a two-inch gap between the bottom of the door frame and the front sidewalk area between the parking lot and the door, and another two-inch gap between the sidewalk and the parking lot. Perhaps either of these gaps might have posed accessibility difficulty for the defendant's son, who, the defendant testified, uses a wheelchair, to enter or exit the building. The back of the CT Page 15052 building, however, has a wide door that is twelve feet, eight inches in width, with virtually no gap (measured by the court during the view to be no more than one-quarter inch) between the parking lot surface and the building's interior floor, and there was no testimony or evidence that the rear entrance to the building imposed any accessibility problems for the defendant's son.
In evaluating the defendant's second special defense, the court does not have the benefit of any evidence as to the age of this building or how recently any improvements might have been made. Nor was there evidence about the number of other units, the number of other parking spaces, the number of whether there are other handicap parking spaces than the one in front of the unit rented by the defendant, or any other of a multiplicity of facts that would be necessary to find that the building did not comply with state or local building code accessibility requirements. The holding of the Appellate Court in Visco v. Cody,16 Conn. App. 444, 448, 547 A.2d 935 (1988), with regard to a landlord's failure to comply with statutory duties in a residential rental context also applies to a commercial rental: "The remedies available to a tenant in the event of the landlord's dereliction of [his] statutory duties are various: the tenant may withhold his rental payment, 47a-4a; the tenant may initiate an action to compel the landlord to perform his legal duties, 47a-14h; or the tenant may interpose the landlord's noncompliance as a defense in a summary process action, 47a-20 and 47a-33.". Furthermore, "to establish uninhabitability, the tenant needs to do more than assert a unilateral, self-serving statement that the premises are untenantable. Evergreen Corporation v. Brown, 35 Conn. Sup. 549,552, 396 A.2d 146 (1978) (suggesting that a tenant "utilize the broad range of municipal boards, agencies, and commissions" to remedy defects)." Visco v. Code, 16 Conn. App. at 450. The same would hold true of a commercial tenant claiming non-compliance with handicap or accessibility requirements. In this case there was no specific evidence that the defendant had complained to governmental authorities or that the plaintiff had been cited by government officials.
While the defendant did appear pro se and represent himself, ultimately the defendant must be held to the same standards of proof as all other parties. While the court is sympathetic to the defendant's laudable goals of vocational rehabilitation for his son, the court finds no basis in the evidence offered as to the second special defense that would defeat plaintiffs claim for CT Page 15053 back rent.
The third special defense is that "[t]here are 94 residential units but there is only one handicapped parking space." There was no evidence offered here of any residential units. To the contrary, the evidence established that this and the other units were all leased for commercial purposes only. Accordingly, the third special defense must also fail.
Therefore, the court enters judgment for plaintiff as follows:
1. Damages of $12,595.
2. Attorneys fees of $1889.25.
3. Statutory costs and fees as may be taxed by plaintiff.
Furthermore, as requested by defendant and agreed to by plaintiff, the court enters an order that defendant make nominal weekly payments in the amount of $25 per week commencing three weeks from date of notification of this judgment.
SO ORDERED.
BY THE COURT
Stephen F. Frazzini, Judge of the Superior Court
11/13/99