[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a summary process action for nonpayment of rent for September 1999. The plaintiff has alleged that he and the defendants, Madeline Ramirez and Jose Baez, entered into an oral month to month lease for premises located at 28 Viets Street, First Floor in New Britain, Connecticut, for a monthly rental of $625.00. On September 20, 1999, the plaintiff served the defendants with a notice to quit the premises by September 27, 1999, because of their failure to pay the September rent. The defendants have pled the following special defenses: 1) Rent was offered to the landlord on September 26, 1999, which was before the date that the Notice to Quit was received; 2) the defendants notified the landlord and the Housing Code Inspector of violations; and 3) the eviction is retaliatory because the defendants contacted public officials or agencies with complaints about their apartment, pursuant to General Statutes § 47a-20[1]
and 47a-33[2]
The pertinent facts found follow: In response to a tenant complaint that the hot water heater and furnace had been out for at least three days, co-owner Marcus A. Bordiere went to the premises on Sunday, September 19, 1999. He cleared water from the basement, fixed the hot water boiler, and told defendant Ramirez that he would return that week to fix the furnace. At that time he requested rent for September from defendant Ramirez but she refused to pay until he repaired the bathroom ceding and until he returned to fix the furnace. At that point the plaintiff told Ramirez that he would evict her. The next day, Monday, September 20, 1999, at about ten in the morning, Housing Inspector John D. Salvetti, Jr. conducted an inspection of the premises in response to a complaint made by the defendants to the City of New Britain Building Department. By letter dated September 20, 1999, CT Page 16716-A Inspector Salvetti cited the owners for numerous code violations, including "Smoke detectors required at the front and rear hallways [and} at all bedroom locations" and ordered them to "INSTALL(smoke detectors] IMMEDIATELY TO CODE." Re-inspections were conducted on October 26, 1999 and November 3, 1999. The smoke detectors had been installed by October 26, 1999. Bordiere testified that he installed the smoke detectors on Columbus Day, a holiday which I judicially notice occurs in October.
I find the plaintiff sustained the burden to prove the defendants did not pay rent for the month of September and the other material allegations of his complaint necessary to prove his claim for possession. The defendants have the burden to prove their special defenses. Atlantic Richfield Co. v. Canaan Oil Co.,202 Conn. 234, 237 (1987).
The defendants allege a tender of rent prior to receipt of the notice to quit. A tender of rent by the lessee after a breach of the covenant of payment but before a declaration of forfeiture by some unequivocal act (such as service of Notice to Quit) by the lessor precludes the latter from completing a forfeiture of the lease. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,149 Conn. 149, 156 (1961) In order to maintain an action for summary process for the nonpayment of rent, the lessor must prove a termination of the lease prior to a tender of rent by the lessee.Simsbury Turnpike Realty v. Great A P Tea Co., 39 Conn. Sup. 367,370 (App. Sess. 1983).
The defendants claim that rent was offered to the landlord on September 26, 1999, prior to the date of receipt of the Notice to Quit. The evidence is otherwise. The sheriff's return on the Notice to Quit indicates service was made on September 20. The sheriff's return is prima facie evidence of the facts stated therein; Jenikins v. Bishop Apartments. Inc., 144 Conn. 389, 390
(1957); and there is a presumption that the matters stated in the return are true. Standard Tallow Corporation v. Jowdy,190 Conn. 48, 53 (1983). Moreover, the defendants have admitted the plaintiff's allegation that "On September 20, 1999, the plaintiff caused a notice to quit possession to be served on the defendant. . . ." Accordingly, the defendants cannot prevail on this defense.
In their special defense pursuant to General Statutes § 47a-20 and 47a-33, the defendants allege they notified the landlord and public agencies of complaints about the apartment and claim the eviction is in retaliation. The Housing Inspector testified that he conducted an inspection on September 20, 1999 CT Page 16716-B at about loin the morning. Sometime on that same day the defendants were served with Notice to Quit. While the temporal sequence of the complaints and service of the notice would be significant in deciding a claim retaliatory eviction, I need not determine the point in this case because neither General Statutes § 47a-20 nor General Statutes § 47a-33 pertains where the reason for the eviction is nonpayment of rent. General Statutes § 47a-20a entitled "Actions deemed not retaliatory" states, "Notwithstanding the provisions of section 47a-20, the landlord may maintain an action to recover possession of the dwelling unit . . . . for nonpayment of rent. . . ." This defense is not available to the defendants.
Although the defendants in their special defenses do not clearly articulate a defense to nonpayment pursuant to General Statutes § 47a-7[3] and § 47a-4a[4], they have produced sufficient evidence at trial, primarily from an independent nonparty witness, to support such a claim.
In defense of a summary process action based on § 47a-7, the defendant must prove that the premises were in such a state in the month of nonpayment so as to render the premises unfit and uninhabitable. "[T]o establish uninhabitability, the tenant needs to do more than assert a unilateral, self-serving statement that the premises are untenantable. Evergreen Corporation v. Brown,35 Conn. Sup. 549, 552 (1978) (suggesting that a tenant `utilize the broad range of municipal boards, agencies, and commissions' to remedy defects)." Visco v. Cody, 16 Conn. App. 444, 450. These defendants have done that.
Based on the testimony of the Housing Code Inspector and his report, I find the lack of smoke detectors at the front and rear hallways and at all bedroom locations rendered the premises unsafe in September, the month of nonpayment and relieved the defendants of the obligation to pay rent.[5] See Tucker v.Lopez, 38 Conn. Sup. 67, 69 (1982) (Failure to install smoke detectors constitutes a material safety hazard and tenants are relieved of obligation to pay rent during period detectors not installed.)
Judgment may enter in favor of the defendants.
Tanzer, J.