[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court for a housing code enforcement hearing pursuant to General Statutes § 47a-14h[1] which provides a method by which a tenant may compel his landlord to perform his legal duties under General Statutes § 47a-7[2].Visco v. Cody, 16 Conn. App. 444, 449 (1988). Known as the "payment of rent into court" statute, Section 47a-14h requires a tenant to deposit with the clerk of the Superior Court an amount equal to the agreed-upon rent after the date a complaint under that section is filed. General Statutes § 47a-14.
On July 1, 1999, the plaintiffs filed this action and sought an order requiring the landlord to make repairs and an award of CT Page 1006 money damages including a retroactive abatement of rent[3].
At the start of this hearing, which is the first before the court, the defendant moved to dismiss the action on the ground that it was filed after he had commenced a summary process action against the plaintiffs. A notice to quit based on lapse of time was served on the defendants on June 14, 1999. The defendants had filed a complaint with the Bristol-Burlington Health District on February 9, 1999.
General Statutes § 47a-14h(a) provides in pertinent part as follows:
 No tenant may institute an action under this section if a valid notice to quit possession or occupancy based upon nonpayment of rent has been served on him prior to his institution of an action under this section or if a valid notice to quit possession or occupancy based on any other ground has been served on him prior to his making the complaint to the agency referred to in subsection (b) of this section, provided any such notice to quit is still effective.
The statute is clear. A housing code enforcement action may not be instituted after service on the tenant of a notice to quit based upon nonpayment of rent, but such an action may be instituted after service of a notice to quit based upon any ground other than nonpayment if the tenant has already made a complaint to a code enforcement agency designated in General Statutes § 47a-14h(b). The notice to quit served upon these plaintiffs was not based upon nonpayment of rent and was not served prior to their making a complaint to the Bristol-Burlington Health District. Accordingly, the motion to dismiss was denied.
The defendant is the owner of the premises located at 14 Harrison Street, Bristol, Connecticut. The plaintiffs have leased the premises since May of 1997. On February 9, 1999, the plaintiff called the Bristol-Burlington Health District to complain about electrical problems, flooding in the basement and chipping paint. On February 26, 1999, an inspection was conducted at the premises by Karen Cables, a registered sanitarian with the health department to investigate the plaintiffs' housing complaints. The violations noted are attached to the complaint and include orders to upgrade the main electrical service, bring all electrical, plumbing and heating to code, clean and seal the CT Page 1007 furnace flu, and repair windows and install window locks. Karen Cables usually gives an owner two weeks to correct violations unless they are life threatening. She discusses building code complaints with the building inspector. If the violations are of a serious nature, the building inspector will tell her to relocate the tenants. In this case, the electrical inspector said that a compliance period of two weeks was appropriate. The work was not completed within two weeks, but the defendant complied with the orders and did things on a regular basis. The electrical work had all been completed in June 1999. There was delay in completing the plumbing and heating repairs because of illness of the contractor. They had all been completed by mid July 1999. The major and majority of the repairs were made well before that time.
Ralph Saucier, an electrical inspector employed by the City of Bristol met with Cables to inspect the premises and determined that the electrical service had to be replaced and that electrical items in the basement were unsafe and had to be replaced. He testified that the work was done pretty quickly, that the repairs took approximately three weeks and that one could live in the premises while the repairs were being made.
Keith Fournier complained that he and his family were required to vacate the premises for 4-5 hours on two occasions because of the painting and they were without electrical service for several hours. Plaintiff Elizabeth Fournier listed among her complaints that there were "hot plugs," that the toilet overflowed on one occasion, and that there were problems with the windows.
At the time of the hearing, the landlord had complied with all orders from the Bristol-Burlington Health District and had corrected all violations. The tenants, however, continue to complain about the electrical service about the quality of the workmanship.
The plaintiffs are seeking an award by way of rent reduction for substandard housing.
 For a tenant to make a successful claim that he had the right to withhold payment of rent, he must show that the landlord's failure to comply with 47a-7(a) "materially affects his safety"; Tucker v. Lopez, 38 Conn. Sup. 67, 69, 457 A.2d 666
(1982); or has rendered the premises "uninhabitable." Steinegger v. Rosario, 35 Conn. Sup. 151, 156, 402 A.2d 1 (1979). CT Page 1008 Furthermore, to establish uninhabitability, the tenant needs to do more than assert a unilateral, self-serving statement that the premises are untenantable. Evergreen Corporation v. Brown, 35 Conn. Sup. 549, 552, 396 A.2d 146 (1978) (suggesting that a tenant "utilize the broad range of municipal boards, agencies, and commissions" to remedy defects). Visco v Cody, supra.
The relief of rent abatement is triggered where there is evidence of a substantial violation or series of violations of housing and health codes creating a material risk or hazard to the occupant. See Visco v. Cody, supra 449-451.
In this case, there is evidence of numerous code violations and that not all repairs were made within a few weeks. The plaintiffs, however, made no complaints to the health department before February 1999, nearly two years after they had moved into the premises and around the time that they were concerned that the defendant would be raising their rent. The sanitarian and the inspector did not require that the violations they found be corrected immediately or that the tenants be relocated, which would have been required in the face of serious or life-threatening violations. Virtually all the matters complained of, taken individually, were of a minor nature, more in the realm of annoyances. They did not create a material risk or hazard to the tenants which rendered the premises uninhabitable. There were, however, code violations in the basement, such as exposed wires in the presence of leaking water, defects in the furnace flue, and improper venting, which rendered the basement unsafe. The tenants, on equitable grounds, are entitled to some rent abatement for hazards to which they have been exposed.
Under General Statutes § 47a-14h(e) the complainant may seek and the court may order interim or final relief including, but not limited to, the following:
 (1) An order compelling the landlord to comply with his duties under local, state or federal law; (2) an order appointing a receiver to collect rent or to correct conditions in the property which violate local, state or federal law; (3) an order staying other proceedings concerning the same property; (4) an award of money damages, which may include a retroactive abatement of rent paid pursuant to subsection (h) of this section: and (5) such other relief in law or equity as the court may deem proper. If the court orders a retroactive abatement of rent pursuant to subdivision (4) of this CT Page 1009 subsection and all or a portion of the tenant's rent was deposited with the court pursuant to subsection (h) by a housing authority, municipality, state agency or similar entity, any rent ordered to be returned shall be returned to the tenant and such entity in proportion to the amount of rent each deposited with the court pursuant to subsection (h). Emphasis supplied.
The court, in ordering interim or final relief, may order that accrued payments of rent or use and occupancy held by the clerk be used for the repair of the building or be distributed in accordance with the rights of the parties. General Statutes §47a-14h(g)[4]
Inasmuch as virtually all violations had been corrected before this action was initiated in July 1999, and all had been corrected at the time of hearing, there is no reason to order that the money paid into court to date be used to make repairs or be held for future repairs. There is no reason to require further payments into court.
At the time of the hearing, the plaintiff, pursuant to statute, had paid $3250.00 to the court clerk's office, in lieu of payment of rent at $650.00 per month for the months of July 1999 through November 1999. An additional $650 for December 1999, has been paid. Thus, the total paid in court is $3900.00. As of this date, the payment for January 2000, has not been made into court by the plaintiffs and is past due. As such, this action is subject to dismissal pursuant to General Statutes § 47a-14h(h).[5]
The action is dismissed. Additionally, since the plaintiffs have failed to make the January payment into court, all payments being held by the clerk of the court shall be remitted to the defendant landlord. Nothing in this order shall be deemed to relieve the plaintiffs of their obligation to pay $650.00 to the defendant for their January use and occupancy, except that the plaintiffs may deduct from any such payment the sum of $300.00 because they are entitled to modest abatement.
TANZER, J.