FAIRCHILD HEIGHTS, INC. *v.* NANCY DICKAL ET AL.
(AC 29854)

Gruendel, Alvord and Borden, Js.

Argued September 10—officially released December 1, 2009

*Abram Heisler*, for the appellants (defendants).

*Thomas T. Lonardo*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. In this summary process action involving a mobile manufactured home site, the defendants, Nancy Dickal, Alan Dickal and Lisa Dickal, appeal from the trial court's judgment of possession in favor of the plaintiff, Fairchild Heights, Inc. The defendants claim that the court improperly: (1) found that certain rules and regulations concerning motor vehicle parking were applied in a manner fair to all of the mobile home park residents; (2) concluded that the defendants failed to establish a presumption of retaliatory eviction pursuant

to General Statutes § 21-80a and that they were therefore sheltered against a summary process action; and (3) declined to apply the defendants' equitable defense of relief from forfeiture. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendants' appeal. The plaintiff is the owner of a mobile manufactured home park consisting of roughly 103 mobile home sites. The defendants are the longtime owners and occupants of a mobile manufactured home located in the plaintiff's park. On or about December 3, 2003, the plaintiff and the defendants executed a one year lease agreement set to commence on January 1, 2004, in connection with this mobile home site. This was the last formally executed lease between the parties. The terms of this lease, however, remained effective throughout the duration of the defendants' residency at the mobile home park.[1]

The lease agreement expressly stated that the monthly charge for parking excess motor vehicles on the defendants' mobile home site was $30 per vehicle. Additionally, the mobile home park rules and regulations, which were appended to and expressly incorporated into the lease by reference, set a limit of two motor vehicles per site without subjecting the resident to the additional vehicle parking fees.

The record reveals that from the outset of when the lease went into effect, the defendants parked more than two motor vehicles on their mobile home site in violation of the terms and conditions as expressed in the lease. At trial, Nancy Dickal conceded that at the beginning of 2004, three vehicles were parked on her mobile

---

[1] Paragraph twelve of the lease agreement addressed the issue of a holdover tenancy and sets forth in relevant part: "In the event that the Resident shall at any time hold over the premises beyond the original term of the lease, such holding over shall be on all the same terms and conditions contained in this lease . . . ."

home site. She further testified that in October, 2004, her family began regularly parking four vehicles on the site.

The plaintiff sent the defendants several bills seeking payment for their parking more than two motor vehicles on the mobile home site. These additional parking fees, however, were never paid by the defendants. Nevertheless, Nancy Dickal testified that for the duration of their residency at the mobile home park, her family parked four motor vehicles on their site.

Consequently, in early 2005, the plaintiff commenced its first summary process proceeding against the defendants on the basis of their aforementioned parking violations. This action eventually was withdrawn by the plaintiff in an attempt to resolve the ongoing parking issues through informal means.

The quarrel between the plaintiff and the defendants was not entirely centered on motor vehicle parking rules and regulations. In February, 2005, about the same time as the plaintiff's first summary process action, Nancy Dickal assisted in organizing a residents association on behalf of the individuals residing in the plaintiff's mobile home park. Shortly thereafter, Nancy Dickal was elected as president of the association. A little more than one year later, in or about July, 2006, the residents association brought an action against the plaintiff concerning a number of alleged housing and maintenance violations in the mobile home park. Additionally, on or about March 13, 2007, the association, through its legal representatives, filed a complaint with the department of consumer protection regarding allegedly illegal lease provisions contained within rental agreements entered into by residents of the mobile home park.

In the midst of this dispute,[2] on August 3, 2007, the plaintiff served the defendants with a formal written

[2] At the time of the present summary process action, the residents association's lawsuit was pending in the trial court.

notice indicating that the defendants were in breach of their rental agreement. Specifically, the notification stated that the defendants were in violation of the mobile home park rules and regulations appended to their 2004 lease regarding motor vehicle parking. The warning gave the defendants thirty days to remedy their alleged violation. The defendants took no remedial action, and on September 8, 2007, the plaintiff served them with a notice to quit possession of the premises by November 19, 2007.

On December 7, 2007, the plaintiff commenced this summary process action against the defendants. The complaint, mirroring the initial formal notification and subsequent notice to quit, alleged that the defendants had failed to comply with the park rules and regulations by parking more than two motor vehicles at their site. The defendants answered the complaint by raising numerous special defenses. The defendants claimed, inter alia, that (1) the mobile home park rules and regulations regarding motor vehicle parking were not applied fairly to all residents as required by General Statutes § 21-70 (d), (2) the summary process action was brought by the plaintiff in retaliation for the lawsuit and department of consumer protection complaints lodged by the residents association and was, therefore, barred by § 21-80a and (3) the eviction of the defendants, under the circumstances, amounted to an inequitable forfeiture of the premises.

The court concluded that all three of those special defenses lacked merit. In its memorandum of decision, the court found that the rules and regulations concerning motor vehicle parking were uniformly applied to the park residents. The court, in support of this finding, referred to evidence of similar eviction proceedings the plaintiff had brought against other park residents who also neglected to make payments in connection with excess motor vehicle parking. The court also concluded

that the plaintiff's summary process proceeding was not within the purview of § 21-80a because the underlying action was not tainted by a retaliatory motive. The plaintiff's action, rather, was "essentially a continuing effort by the plaintiff to enforce the rules and regulations and resolve a problem that arose long before any of [Nancy] Dickal's involvement in lawsuits against the plaintiff or her other activities." Finally, the court concluded that the defendants' " 'extraordinary' " inequitable forfeiture defense did not apply in these circumstances. Accordingly, the court rendered judgment for possession in favor of the plaintiff. This appeal followed.

I

The defendants first claim that the court improperly found that the residents of the mobile home park were subjected to the park rules and regulations concerning motor vehicle parking in a fair manner as required by § 21-70 (d) (3).[3] These rules, they claim, were therefore unenforceable and could not form the basis of a summary process action pursuant to § 21-80 (b) (1) (C).[4] We disagree.

The court's finding that the plaintiff evenhandedly applied the park rules and regulations concerning resident parking is a finding of fact subject to the clearly erroneous standard of review. "The law governing [our]

[3] General Statutes § 21-70 (d) provides in relevant part: "An owner [of a mobile manufactured home park], from time to time, may adopt a rule or regulation, however described, concerning the resident's use and occupancy of the premises. Such rule or regulation shall be enforceable against the resident only if . . . (3) such rule or regulation applies to all residents on the premises in a fair manner, provided reasonable exemptions may be made for good cause . . . ."

[4] General Statutes § 21-80 (b) (1) provides in relevant part: "[A]n owner may terminate a rental agreement or maintain a summary process action against a resident who owns a mobile manufactured home only for one or more of the following reasons . . . (C) Material noncompliance by the resident with the rental agreement or with rules or regulations adopted under section 21-70 . . . ."

limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 216–17, 932 A.2d 401 (2007).

The defendants challenge the court's finding as to the fair application of the motor vehicle parking rules and regulations on the basis of certain testimony presented at trial. In particular, the defendants direct our attention to the testimony of other park residents who stated that they each had more than two vehicles parked on their mobile home site but were never the subject of any summary process actions initiated by the plaintiff.[5]

[5] Jeffrey Doolan, the plaintiff's president, testified that many of the residents who were parking more than two vehicles on their sites at the time of this action were properly doing so pursuant to a "grandfathering rule" that the plaintiff adopted in 2007. This rule permitted residents, who were current in their payments for parking more than two motor vehicles as of the end of 2006, to continue parking a third vehicle throughout 2007 at no additional charge. The defendants claim that this "grandfathering rule" was invalid because it was not in writing as required by § 21-70 (d) (5) and was not filed with the department of consumer protection as required by § 21-70 (e).

Although the record is vague as to whether this "grandfathering rule" did or did not comply with the requirements set forth in § 21-70, the rule's validity is of no consequence. The defendants do not claim to have even a remote connection to this "grandfathering rule," having not been current with their motor vehicle parking payments as of the end of 2006. As such, we cannot decipher how the alleged invalidity of this rule as to residents

A thorough review of the record, however, also reveals ample evidence supporting the plaintiff's fair and even application of the motor vehicle parking rules as to other park residents. Specifically, the record reflects that, in addition to the original summary process action commenced against the defendants in 2005, the plaintiff also brought summary process actions against two other park residents on the basis of similar motor vehicle parking violations. The court's finding as to the fair application of the parking rules and regulations to the mobile park residents was amply supported by the evidence and, therefore, was not clearly erroneous. Accordingly, this claim fails.

II

We next address the defendants' claim that the plaintiff's summary process action was retaliatory and consequently in violation of § 21-80a. Specifically, the defendants claim that the court improperly concluded that they failed to establish a presumption of retaliation pursuant to § 21-80a (a). The defendants claim, therefore, that the court's judgment of possession in favor of the plaintiff was in contravention of the rule enunciated in *Correa* v. *Ward*, 91 Conn. App. 142, 147, 881 A.2d 393 (2005) (only means available to rebut presumption of retaliation are those eviction grounds expressly excepted by retaliatory action statute), as the plaintiff's ground for eviction was not enumerated in § 21-80a (b). We disagree.

Section 21-80a (a) prohibits owners of manufactured mobile home parks from maintaining an action for possession of a mobile home lot against a park resident within six months of that resident's undertaking certain protected actions listed in the statute.[6] If a possession

of the mobile home park, other than the defendants, has any relevance to this appeal.

[6] General Statutes § 21-80a (a) provides in relevant part: "An owner shall not maintain an action or proceeding against a resident to recover possession of a dwelling unit or a mobile manufactured home space or lot . . . within

action is so initiated by an owner within this protected time frame, a rebuttable presumption of retaliatory eviction arises. *Wilson* v. *Jefferson*, 98 Conn. App. 147, 154, 908 A.2d 13 (2006).[7] Furthermore, under *Correa*, the exclusive manner in which an owner may rebut this presumption is by demonstrating that the summary process proceeding was commenced pursuant to one of the protected grounds for bringing a possession action listed in § 21-80a (b).[8] *Correa* v. *Ward*, supra, 91 Conn. App. 147.

six months after: (1) The resident has in good faith attempted to remedy by any lawful means, including contacting officials of the state or of any town, city or borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any provision of this chapter or chapter 368o or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) the resident has in good faith requested the owner to make repairs; (4) the resident has in good faith instituted an action under subsections (a) to (i), inclusive, of section 47a-14h; or (5) the resident has organized or become a member of a residents' association."

[7] The overwhelming majority of Connecticut cases concerning retaliatory eviction have been brought pursuant to General Statutes § 47a-20, which addresses the landlord-tenant relationship, as opposed to the mobile home owner-mobile home occupant situation presented before us. See, e.g., *Correa* v. *Ward*, supra, 91 Conn. App. 145; *Visco* v. *Cody*, 16 Conn. App. 444, 446, 547 A.2d 935 (1988); *Groton Townhouse Apartments* v. *Covington*, 38 Conn. Sup. 370, 372, 448 A.2d 221 (App. Sess. 1982).

Section 47a-20, however, is essentially analogous in wording and purpose to § 21-80a. Therefore, the analysis used to interpret § 47a-20 as creating a rebuttable presumption of retaliation may be used to construe § 21-80a as having the same effect. See also 34 H.R. Proc., Pt. 22, 1991 Sess., p. 8512, remarks of Representative Douglas C. Mintz (to resolve certain ambiguities between the relationship of the landlord-tenant act and the mobile home park act, "we take the applicable part of the [landlord-tenant] act and write them directly into the mobile home park act").

[8] General Statutes § 21-80a (b) provides: "Notwithstanding the provisions of subsection (a) of this section, if permitted by subdivision (1) of subsection (b) of section 21-80, the owner may maintain an action to recover possession of the premises if: (1) The resident is using the dwelling unit or the premises for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent; (2) the condition complained of was caused by the wilful actions of the resident or another person in his house-

The defendants claim that several of the complaints initiated by the residents association, of which Nancy Dickal was president and which she helped to organize, placed the defendants within the protection of § 21-80a (a). Specifically, they claim that the pending lawsuit[9] filed against the plaintiff by the association in July, 2006, and the complaints filed by the association's legal representatives with the department of consumer protection on March 13, 2007, were protected actions that came within six months of the plaintiff's maintaining a possession proceeding against the defendants. Thus, the defendants claim that the present summary process action was subject to a rebuttable presumption of retaliation that the plaintiff could not successfully rebut under § 21-80a (b).

Even if we assume arguendo that the defendants can establish a presumption of retaliatory action under § 21-80a (a) because the action was brought within the statutorily protected six month time period, § 21-80a (b) (1) expressly recognizes that an owner may maintain an action for possession, notwithstanding § 21-80a (a), if "[t]he resident is using the dwelling unit or the premises for an illegal purpose or *for a purpose which is in violation of the rental agreement* or for nonpayment of rent . . . ." (Emphasis added.) General Statutes § 21-80a (b) (1). The defendants claim that the language "for a purpose which is in violation of the rental agreement" only operates to rebut a presumption of retaliation in the situation in which the dwelling unit or premises itself, as a whole, is being used in a manner that violates the rental agreement, e.g., for a commercial rather than a residential purpose. We conclude, to the contrary, that this statutory language—"for a purpose

hold or a person on the premises with his consent; or (3) the owner seeks to recover possession pursuant to section 21-80 on the basis of a notice which was given to the resident before the resident's complaint."

[9] See footnote 2 of this opinion.

which is in violation of the rental agreement"—encompasses the situation, as in the present case, in which the resident's conduct is in violation of a material provision of the rental agreement, namely, parking more than the permitted number of vehicles on the premises without paying for the right to do so.

The defendants' claim raises a question of statutory construction, which is a question of law, "over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8–9, 976 A.2d 668 (2009).

We begin our statutory analysis by examining the relevant language of § 21-80a (b) (1) to determine whether it is plain and unambiguous. The question in this case is whether § 21-80a (b) (1) is only applicable

when the entire rental site is being used "for a purpose which is in violation of the rental agreement," or whether the section applies in a broader sense to situations in which the resident's conduct violates a material term or condition of the agreement. Because both readings of the statute are plausible, we conclude that the statutory language is ambiguous in this case. See *Commission on Human Rights & Opportunities* v. *Litchfield Housing Authority*, 117 Conn. App. 30, 45, 978 A.2d 136 (2009) (statute sufficiently ambiguous if text susceptible to more than one plausible meaning). We are not barred, therefore, by § 1-2z from consulting extratextual sources to determine the meaning of the statutory language at issue.

We turn, first, nonetheless, to the language of the statute. The preceding phrase in § 21-80 (b) (1), which refers to a situation in which the resident is using the premises "for an illegal purpose," encompasses the situation in which the use of the property, although not specifically barred by the rental agreement, is nonetheless illegal. An example of this would be when the resident uses the property to distribute illegal drugs. This is in contrast to the following phrase, "for a purpose which is in violation of the rental agreement," which linguistically focuses on situations in which the use is legal but nonetheless violates the rental agreement in some way. It does not, however, give any linguistic clue as to the scope of the requisite violation of the rental agreement.

We next turn, therefore, to an analysis of the relevant extratextual sources to determine the scope of § 21-80a (b) (1). Although the legislative history of § 21-80a (b) (1) is barren of any indication as to the intended meaning of this specific phrase, the history of the Landlord Tenant Act (act), General Statutes § 47a-1 et seq., illuminates the meaning of the mobile manufactured home site provisions at issue in the present case. As

we have indicated; see footnote 7 of this opinion; the two statutes are essentially in pari materia.

The legislative history of the act demonstrates that the purpose of the act, as a whole, was intended to provide just and adequate protection to both tenants and landlords. Senator Lawrence J. DeNardis, for example, remarked that the legislation "embodies . . . a number of good trade-offs between landlords and tenants with respect to their mutual rights and obligations . . . ." 19 S. Proc., Pt. 2, 1976 Sess., p. 818. Senator David H. Neiditz echoed Senator DeNardis' comments, stating that the act is "a well balanced piece of Legislation between landlord and tenants . . . [that] gives us the opportunity to have . . . fairer and better landlord tenant relations." Id., p. 817. In *Alteri* v. *Layton*, 35 Conn. Sup. 261, 267, 408 A.2d 18 (1979), the trial court examined the statutory defense of retaliatory eviction in a summary process action similar to the one before us and concluded that "[t]o enforce properly the statute in a meaningful manner requires a balancing of the interests of both landlord and tenant . . . by fairly protect[ing] the landlord from harassment and *. . .* protect[ing] the tenant who seeks repairs of a substantial nature." We conclude that this broad purpose of balancing the interests of landlords and tenants applies equally to the statutory scheme governing mobile manufactured home site owners and mobile home residents who rent such home sites. This purpose, applied to the facts of this case, strongly supports the conclusion that the statutory language at issue encompasses more than the use of the property for an overall purpose that is in violation of the rental agreement, as the defendants urge, but also encompasses the situation here, in which the resident's conduct is in violation of a material provision of the rental agreement. This is because the interpretation that we have chosen is consistent with such a balance, whereas the interpretation urged by the

defendants would be inconsistent with such a balance and would tilt it unfairly in favor of the resident.

Mindful of balancing the respective rights between owners and renters, we cannot agree with the exceedingly narrow construction of § 21-80a (b) (1) propounded by the defendants. Were we to conclude otherwise, we could encourage a situation in which a resident could lodge a complaint against an owner, albeit in good faith, continue to pay rent as required by § 21-80a (b) (1), and neglect virtually any and all other provisions in the lease agreement for the statutorily protected six month time period, as long as the resident does not use the mobile home unit itself or the unit premises for an overall purpose that violates the rental agreement, such as using residential property for a commercial purpose. In the present case, the defendants' lease agreement contained many terms and conditions that not only furthered the interests of the plaintiff and the defendants, but also the neighboring residents in the mobile home park.[10] In addition to the terms relating to excess motor vehicle parking expenses, the defendants' lease agreement assessed reasonable fees for improperly disposed of waste, additional occupants, pets and dishwashers or washing machines, all of which could potentially be avoided under a narrow reading of § 21-80a (b) (1).

Moreover, many of the rules incorporated into the lease agreement addressed the defendants' responsibilities as to their upkeep of property aesthetics, along with limitations on guest frequency and general noise

---

[10] The two car per residence limitation on motor vehicle parking, for example, was adopted by the plaintiff for the purpose of benefiting the entire mobile home park community. According to Jeffrey Doolan, the plaintiff's president, the rule was enacted to ensure that the plaintiff could properly maintain the roads in the park, particularly during times when snow removal was necessary. The defendants' continued violation of this rule, therefore, was to some extent detrimental to all of their neighboring residents.

levels emitting from their premises. It is certainly conceivable that everyday violations of these rules could disrupt the peaceable enjoyment of neighboring park residents.[11] The defendants' proposed interpretation of § 21-80a (b) (1), however, would leave an owner with no power to evict the troublesome residents for upward of six months. Meanwhile, the disruptive tenants would be essentially free to violate any covenants contained within the lease agreement and avoid eviction as long as their rent payment was current. Such a scenario would transform a statute that was "intended as a shield for the benefit of tenants . . . into a sword to deprive landlords of their property." *Visco* v. *Cody*, 16 Conn. App. 444, 453, 547 A.2d 935 (1988); see also *Wilson* v. *Jefferson*, supra, 98 Conn. App. 155 (language of retaliatory eviction statutes serves as shield for tenants, rather than sword).

Although we recognize that "[c]ourts must interpret statutes as they are written . . . we are also bound by our duty to avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain." (Citations omitted; internal quotation marks omitted.) *Visco* v. *Cody*, supra, 16 Conn. App. 447–48. We conclude that an overly literal and excessively narrow reading of § 21-80a (b) (1) would yield just such an irrational result, as it could seriously limit an owner's ability to care for his property, as well as emasculate the duty to protect the quiet enjoyment of other tenants.[12] We

[11] General Statutes § 21-82 (b) provides in relevant part: "At all times during the tenancy the [mobile home] resident shall . . . (8) [c]onduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises . . . ."

[12] "[U]nder landlord-tenant law, [it is] the right of a tenant to enforce a covenant of quiet enjoyment . . . . The covenant assures that the lessee shall have legal quiet and peaceable possession and enjoyment of the leased premises . . . . [It] is the obligation of the landlord to protect his tenant relative to the tenant's right to quiet and peaceful possession . . . ." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Nameaug Walk-*

cannot assume that this was the intent of the legislature, as such a construction tends to disturb "the delicate balance of the rights of tenants and landlords." Id., 453. Accordingly, the court's conclusion that the plaintiff's summary process action was not barred by § 21-80a (a) was proper because the action was permissible under § 21-80a (b) (1).

### III

Finally, the defendants claim that the court improperly concluded that the doctrine of equitable forfeiture was not an applicable special defense in this case. We disagree.

It is well settled that equitable defenses such as relief from forfeiture are available to residents in summary process proceedings. *Fellows* v. *Martin*, 217 Conn. 57, 61–62, 584 A.2d 458 (1991). The defendants argue that the court should have applied the defense of equitable relief from forfeiture in this case on the premise that, having lived in their mobile home at the plaintiff's park for more than thirty years, the defendants would lose a substantial investment if forced to remove the mobile home and to relocate to a new park. This process would be particularly inequitable, according to the defendants, on the basis of their limited income and difficulty finding a suitable vacancy in a nearby mobile home park.

The defendants, however, fail to recognize that "[a] court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief . . . ." Id., 67. The clean hands doctrine "expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." *Emigrant Mortgage Corp.* v. *D'Agostino*, 94 Conn. App. 793, 804,

---

*in Medical Center, P.C.*, 35 Conn. App. 185, 190, 644 A.2d 398 (1994), appeal dismissed, 233 Conn. 213, 657 A.2d 639 (1995).

896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006). Therefore, "a tenant whose breach was 'willful' or 'grossly negligent' will not be entitled to [equitable] relief." *Fellows* v. *Martin,* supra, 217 Conn. 67; see also *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.,* 225 Conn. 771, 778, 627 A.2d 386 (1993) ("[w]illful or gross negligence in failing to fulfill a condition precedent of a lease bars the application of the doctrine of equitable nonforfeiture").

In the present case, the court characterized the defendants' violation of their lease agreement as "wilful," finding that "despite many attempts over several years by the plaintiff to obtain the defendants' compliance with established rules, the defendants persisted in their refusal to comply but nonetheless continued to remain as tenants of the plaintiff." We are reluctant to interfere with a court's exercise of equitable discretion and will ordinarily only reverse "where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . ." (Citations omitted.) *Fellows* v. *Martin,* supra, 217 Conn. 68. We conclude, therefore, that the court reasonably could have found that the defendants' breach was wilful and consequently that equitable relief of nonforfeiture was not appropriate. The defendants were cognizant of the fact that they were in breach of their lease agreement, as evidenced by their receipt and nonpayment of billing charges in connection with parking more than two vehicles on their site, along with their involvement in a prior summary process action grounded on the same behavior. The defendants nevertheless refused to comply with the mobile home park rules and regulations with regard to motor vehicle parking for almost four years.

The judgment is affirmed.

In this opinion the other judges concurred.